Nos. 19-cv-944, 19-cv-1120, 19-cv-1121, 19-cv-1122

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: IMERYS TALC AMERICA, INC., IMERYS TALC VERMONT, INC.,
AND IMERYS TALC CANADA, INC.,

*Debtors.*

**CYPRUS HISTORICAL EXCESS INSURERS,**
*Appellant,*

**v.**

**IMERYS TALC AMERICA, INC., IMERYS TALC VERMONT, INC., IMERYS TALC CANADA, INC., AND FUTURE CLAIMANTS' REPRESENTATIVE**

*Appellees.*

On Appeal from the United States Bankruptcy Court
for the District of Delaware
(No. 19-br-10289—Hon. Laurie Selber Silverstein)

**JOINDER AND RESPONSE BRIEF OF APPELLEE
JAMES L. PATTON, JR. IN HIS CAPACITY AS THE
FUTURE CLAIMANTS' REPRESENTATIVE**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Sara Beth A.R. Kohut (No. 4137)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rbrady@ycst.com
eharron@ycst.com
skohut@ycst.com
*Counsel to the Future Claimants' Representative*

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................2

STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW
STATEMENT OF THE CASE....................................................................................4

1.    The Bankruptcy Court Appointed Patton After Considering the
      Comprehensive Record, Including Additional Disclosures from Patton
      and the Insurers' Untimely Objections...........................................................4

2.    No Party Timely Objected to Young Conaway's Retention. ........................7

3.    The Discovery Sought Irrelevant Information From Debtors. .....................8

SUMMARY OF THE ARGUMENT ........................................................................8

ARGUMENT .............................................................................................................9

        I.     THESE APPEALS SHOULD BE DISMISSED BECAUSE
               THE INSURERS LACK STANDING AND WAIVED THE
               CONFLICTS OBJECTIONS BOTH EXPRESSLY AND BY
               FAILING TO TIMELY RAISE THEM BELOW. ...........................9

               A.    Three Insurers Demonstrate No Injury and One Is Not a
                     Party. ....................................................................................9

               B.    Continental and National Union Are Estopped from
                     Objecting and Have Waived Their Objections by Tardily
                     Raising Them. .....................................................................10

        II.    THE BANKRUPTCY COURT APPOINTED THE FCR
               UNDER A STANDARD MORE RIGOROUS THAN THAT
               REQUIRED BY THE BANKRUPTCY CODE. ..............................12

               A.    There is No Concurrent Conflict of Interest Under Rule
                     1.7(a). ..................................................................................13

                     1.    Young Conaway's Representation of the
                           Insurers in Warren *Pumps* is Not Directly
                           Adverse to Representation of the Future
                           Claimants of the Debtors. .............................................14

i

2.   The Bankruptcy Court Found and the Record Confirms There is No Significant Risk of Material Limitation in Representing Either Client..................................................15

B.   Exceptions Under Rule 1.7(b) Permit the Concurrent Representation..................................................17

1.   The Record Shows That Rules 1.7(b)(2) and (b)(3) Are Satisfied........................................18

2.   Rule 1.7(b)(1) is Satisfied Because the Record Confirms Patton's Unimpaired Ability to Represent the Future Claimants....................18

3.   Rule 1.7(b)(4) is Satisfied Because, To the Extent There is a Concurrent Conflict, It Is Waivable and Has Been Waived. ..................................20

i.   The Insurers' Waived the Concurrent Conflict Prospectively in the *Warren Pumps* Engagement Letter. ..................................20

ii.   The Bankruptcy Court Waived Any Concurrent Conflict on Behalf of the Future Claimants. ..................................21

C.   The Bankruptcy Court Properly Exercised its Discretion in Appointing Patton, and its Findings Should Be Accorded Deference..................................................24

1.   The Bankruptcy Court Has Broad Discretion to Evaluate a Professional's Alleged Conflicts of Interests..................................................24

2.   Evaluating the Existence and Effect of an Alleged Conflict Requires Consideration of All Relevant Facts. ..................................................26

3.   Disqualification is Disfavored Because of its Tactical Use. ..................................................27

III.  THE RECORD CONFIRMS PATTON'S APPOINTMENT WAS APPROPRIATE UNDER THE GENERALLY ACCEPTED STANDARD OF DISINTERESTEDNESS..................28

A.   The Disinterestedness Inquiry Focuses on Whether Patton Has an Interest <u>Materially</u> Adverse to Future Claimants, and the <u>Record</u> Confirms He Does Not..................29

B.    Precedent From the Third Circuit Supports The
Bankruptcy Court's Appointment of Patton and
Retention of Young Conaway..................................................30

IV.    THE BANKRUPTCY COURT PROPERLY APPROVED
PATTON'S RETENTION OF YOUNG CONAWAY. .....................33

V.    THE BANKRUPTCY COURT PROPERLY EXERCISED
DISCRETION IN ITS DISCOVERY RULINGS. ............................35

CONCLUSION .......................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 22 Acquisition Corp.*,
2004 WL 870813 (E.D. Pa. Mar. 23, 2004) ......................................................11

*In re Am. Biomaterials Corp.*,
954 F. 2d 919 (3d Cir. 1992) ...............................................................................11

*In re B.E.S. Concrete Prods., Inc.*,
93 B.R. 228 (Bankr. E.D. Pa. 1988) ....................................................................24

*Bd. of Regents of Univ. of Nebraska v. BASF Corp.*,
2006 WL 2385363 (D. Neb. Aug. 17, 2006) .......................................................11

*In re Cendant Corp. Secs. Litig.*,
404 F.3d 173 (3d Cir. 2005) ...............................................................................22

*Chase Manhattan Bank v. Iridium Africa Corp.*,
307 F. Supp. 2d 608 (D. Del. 2004) .....................................................................11

*Collick v. Weeks Marine, Inc.*,
2011 WL 1527380 (D. N.J. Apr. 20, 2011) ...........................................................9

*In re DaimlerChrysler AG Secs. Litig.*,
2003 WL 22769051 (D. Del. Nov. 19, 2003) .......................................................11

*Egersheim v. Gaud*,
2011 WL 13238543 (D. N.J. Mar. 30, 2011) .......................................................11

*Ellison v. Chartis Claims, Inc.*,
142 A.D. 3d 487 (N.Y. Sup. Ct. App. Div. 2016) ..............................................10

*Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*,
142 F. Supp. 2d 579 (D. Del. 2001) .....................................................................27

*In re Fairbanks Co.*,
601 B.R. 831 (Bankr. N.D. Ga. Apr. 17, 2019) ...................................................12

*In re Ginaldi*,
463 B.R. 314 (Bankr. E.D. Pa. 2011) ..................................................................21

iv

*In re Global Marine, Inc.*,
　108 B.R. 998 (Bankr. S.D. Tex. 1987) ............................................................24

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
　55 F.3d 768 (3d Cir. 1995), *cert. denied*, 116 S.Ct. 88 (1995).........................22

*Grunin v. Int'l House of Pancakes*,
　513 F.2d 114 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) .....................22

*Hughes v. InMotion Entmt.*,
　2008 WL 3889725 (W.D. Pa. Aug. 18, 2008)......................................22, 25, 27

*In re, BH & P, Inc.*,
　949 F.2d 1300 (3d. 1991)...............................................................................24

*In re Jade Mgmt. Servs.*,
　386 Fed. Appx. 145 (3d Cir. 2010)..................................................................26

*Lanard Toys Ltd. v. Dolgencorp LLC*,
　2016 WL 7326855 (M.D. Fla. Dec. 16, 2016) .................................................28

*Larson v. Dumke*,
　900 F.2d 1363 (9th Cir. 1990), *cert. denied*, 498 U.S. 1012 (1990) .................19

*In re Marvel Entmt. Grp., Inc.*,
　140 F.3d 463 (3d Cir. 1998) ........................................................26, 29, 32, 34

*In re Melilo*,
　2015 WL 6151230 (D. N.J. Oct. 19, 2015) ......................................................35

*In re Muma Servs., Inc.*,
　286 B.R. 583 (Bankr. D. Del. 2002)................................................................27

*In re Nat'l Football League Players Concussion Injury Litig.*,
　821 F.3d 410 (3d Cir. 2016), *cert. denied*, 137 S.Ct. 591 (2016)................22, 23

*In re Oracle Secs. Litig.*,
　131 F.R.D. 688 (N.D. Cal. 1990).....................................................................22

*In re Pinebrook, LLC*,
　441 B.R. 67 (Bankr. E.D. Va. 2009)................................................................29

*In re Radnor Holdings Corp.*,
    528 B.R. 245 (D. Del. 2014), *aff'd*, 629 Fed. Appx. 277 (3d Cir.
    2015), *cert. denied*, 137 S. Ct. 294 (2016) ..................................................25, 26

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    965 F. Supp. 2d 104 (D.C. Cir. 2013)...........................................................19, 25

*Subero v. Hess Oil Virgin Islands Corp.*,
    1981 WL 705554 (D. V.I. June 3, 1981).........................................................23

*Viking Pump, Inc. and Warren Pumps, LLC v. Century Indemnity Co.*,
    C.A. No. 10C-06-141-PRW.........................................................................*passim*

*Wyeth v. Abbott Labs.*,
    692 F. Supp. 2d 453 (D. N.J. 2010)................................................................25

**STATUTES**

11 U.S.C. § 327(a) ............................................................................................31

11 U.S.C. § 524(g) ............................................................................................21

**OTHER AUTHORITIES**

ABA Formal Opinion 05-435 (2004) ................................................................14

Appellee, James L. Patton, Jr. ("**Patton**"), in his capacity as the legal representative for future talc personal injury claimants' of the Debtors (the **"Future Claimants' Representative"** or "**FCR**"), submits this joinder and response brief. Pursuant to Federal Rule of Appellate Procedure 28(i), the FCR hereby joins in the Brief for Appellees Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada, Inc. (the **"Debtors' Brief"**)[1] (Docket No. 22 in C.A. No. 19-944; Docket No. 21 in C.A. Nos. 19-1120, 19-1121, and 19-1122), which responds to the Appellants' Opening Brief on Appeal From a Bankruptcy Court Order Appointing James Patton of Young Conaway as Future Claimants' Representative ("**Ins. Br.**") (Docket No. 14 in C.A. No. 19-944; Docket No. 13 in C.A. Nos. 19-1120, 19-1121, and 19-1122). The FCR also submits this brief to respond separately to arguments of the Appellants that are not addressed in the Debtors' Brief.

The Appellants identify themselves as: Columbia Casualty Company ("**Columbia**"), Continental Casualty Company and the Continental Insurance Company as successor to CNA Casualty of California and as successor in interest to certain insurance policies issued by Harbor Insurance Company

---

[1] The FCR does not join in the assertion in the Debtors' Brief that the Debtors' talc is safe and asbestos-free and that the claims alleging asbestos-related and other diseases caused by exposure to Debtors' talc are entirely without merit.

("**Continental**"), Lamorak Insurance Company (formerly known as OneBeacon America Insurance Company) as successor to Employers' Surplus Lines Insurance Company ("**Lamorak**"), Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance Company) ("**Stonewall**"), National Union Fire Insurance Company of Pittsburgh PA, ("**National Union**") and Lexington Insurance Company ("**Lexington**") "to the extent that they issued policies to Cyprus Mines Corporation prior to 1981." (Ins. Br. at 6 n. 2). This brief will refer to this group collectively as the "**Insurers**".

## INTRODUCTION

The Insurers state that "[b]ecause he has no actual clients, the Future Claimants' Representative ('FCR') must answer to the Court, which must therefore carefully scrutinize any conflicts of interest." (Ins. Br. at 7) That is precisely what occurred in this case: the Bankruptcy Court appointed Patton as the FCR and approved his retention of Young Conaway Stargatt & Taylor, LLP ("Young Conaway") as his counsel after giving careful consideration to the extensive disclosures made by Patton and Young Conaway.

The Bankruptcy Court issued its rulings with the benefit of a record that included objections and argument not just from the Insurers, but also from the U.S. Trustee. The record further included an evidentiary hearing before the Bankruptcy Court, during which Patton testified and was cross-examined by counsel for both

the U.S. Trustee and the Insurers. The Bankruptcy Court also considered the uninvited supplemental objection to the form of order and declaration of the Insurers filed three weeks after the evidentiary hearing closed, and the corresponding response of Patton. Those belated filings were the first written pleadings to raise the alleged conflicting interests addressed in the Insurers' Opening Brief, and the Insurers have provided no explanation for their failure to raise these issues earlier in the proceedings below.[2]

The Bankruptcy Court is the gatekeeper in a bankruptcy case. With its front-line view in evaluating the facts and arguments, and in-person assessment of the credibility of witnesses, testimony and other evidence, the Bankruptcy Court is in the best position to determine whether a proposed fiduciary has a disqualifying conflict. Accordingly, the Bankruptcy Court is accorded broad discretion in appointing future claimants' representatives, and its findings of fact are entitled to great deference.

Here, the Insurers argue there is a disqualifying conflict based on (1) Young Conaway's representations of certain of the Insurers in the unrelated *Warren*

---

[2] The FCR believes the record below confirms the Bankruptcy Court's conclusions. To the extent the District Court finds that these late-raised arguments require additional factual development, the appropriate remedy is to remand this matter to the Bankruptcy Court for further development of the record and review of the factual findings on that expanded record.

*Pumps* insurance-coverage litigation, and (2) Young Conaway's website containing an erroneous page soliciting potential talc plaintiffs. As discussed herein and in the Debtors' Brief and confirmed by the record below, the Bankruptcy Court considered and rejected these arguments. The record also supports the Bankruptcy Court's determinations that the applicable Insurers expressly waived their right to challenge Patton's appointment and Young Conaway's retention in these bankruptcy cases. Thus, in addition to being dilatory in raising these issues below, the Insurers are estopped by their express prospective waiver from making these arguments.

## STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW
## STATEMENT OF THE CASE

Appellee Patton joins in the Statement of the Issues and Standards of Review and the Statement of the Case set forth in the Debtors' Brief.[3] Patton responds separately to highlight the following facts confirmed by the record:

**1.  The Bankruptcy Court Appointed Patton After Considering the Comprehensive Record, Including Additional Disclosures from Patton and the Insurers' Untimely Objections.**

Following an evidentiary hearing, the Bankruptcy Court issued a ruling on May 7, finding that the process by which the court considered the appointment of

---

[3] Patton also joins in the addendum of the Debtors' Brief setting forth relevant statutory provisions and rules.

the proposed FCR was appropriate, adopting an appointment standard based on analogizing the FCR to a guardian *ad litem*, and requesting additional disclosures from Patton. The Bankruptcy Court found that Patton was qualified and had "undivided loyalties[,]" and would be appointed subject to providing certain confirmatory disclosures. (APP524-527)[4]

As requested by the court Patton filed supplemental declarations on May 13 and May 17. (APP528, APP532) Patton's responses to the court's inquiries squarely refuted the Insurers' contentions here. The declarations confirmed that neither Patton nor Young Conaway represent talc claimants and that Patton has not personally provided representation to any of the Insurers. (APP529) Patton's declarations quoted the waiver language in Young Conaway's engagement letter for the *Warren Pumps* representation, discussed the status of certain other insurance representations Patton and Young Conaway had disclosed, and noted that Young Conaway has no insurance-coverage representations related to talc. (APP529, APP533)

---

[4] References to "(APP___)" are to the Appendix to Appellants' Certain Excess Insurers' Opening Brief, (Docket No. 15 in C.A. No. 19-944; Docket No. 14 in C.A. Nos. 19-1120, 19-1121, and 19-1122). References to "(SA___)" are to the Supplemental Appendix, (Docket No. 23 in C.A. No. 19-944; Docket No. 22 in C.A. Nos. 19-1120, 19-1121, and 19-1122).

Further, Patton's declaration stated that, after conferring with Young Conaway's general counsel and reviewing the applicable rules and related authority, Young Conaway's representation of certain of the Insurers in unrelated matters did not impose any constraints on his ability to take a position as the FCR in these cases. (APP529, APP533) Patton's declarations also stated that Young Conaway had implemented an ethical wall around this matter and around the matter involving representation of certain of the Insurers. (APP530, APP534-535) Young Conaway filed a supplemental declaration with similar disclosures on June 5. (SA644)

On May 17 – three weeks after the evidentiary hearing and with no invitation from the court for additional filings – the Insurers filed a supplemental objection to the proposed form of order appointing Patton. (SA603) Patton filed a response to the Insurers' untimely supplemental objection on May 21, in which Patton argued that the prospective waiver signed by the applicable Insurers was effective under Model Rule 1.7, and that it rendered the Insurers' objection meritless. (SA624-635) The response further stated that Young Conaway erected the ethical wall out of prudence at the suggestion of the Bankruptcy Court. (SA634-635)

Later that day, the Insurers filed the declaration of Mark Muth, counsel for the applicable Insurers' claims administrator, objecting on behalf of National

Union, Lexington and Continental to Patton's appointment and Young Conaway's retention. Muth was never subject to cross-examination. (APP554)

On May 23, the Bankruptcy Court requested *in camera* submission of Young Conaway's engagement letter for *Warren Pumps*, which Young Conaway provided. (SA639)

On May 31, the Bankruptcy Court issued a further ruling on appointment of the FCR. (APP561) The court noted it had considered the Insurers' belated objection, Patton's response, and the Muth declaration. The ruling included a detailed analysis of the Insurers' belated objection and Young Conaway's *Warren Pumps* engagement letter, and concluded that the prospective waiver was effective and Patton would be appointed as the FCR. Subsequently, the Bankruptcy Court entered the orders appointing Patton as FCR, denying the Insurers' motion to compel, and approving Patton's retention of Young Conaway. (SA640, APP570, SA450)

### 2. No Party Timely Objected to Young Conaway's Retention.

No party objected to Patton's retention of Young Conaway as his counsel until three weeks after the evidentiary hearing on the Debtors' motion to appoint the FCR, when the Insurers' filed their supplemental objection. In that untimely objection, the Insurers objected to the proposed form of order appointing the FCR. (SA603) The Insurers also objected to Patton's appointment and Young

Conaway's retention based on their supplemental disclosures, but raised no arguments against Young Conaway's retention separate from the arguments against Patton's appointment. (SA603-621) The relief requested in the supplemental objection was that the court deny the Debtors' proposed order appointing Patton as the FCR. (SA622)

### 3. The Discovery Sought Irrelevant Information From Debtors.

The Insurers did not seek discovery from Patton or Young Conaway. The only discovery the Insurers sought was directed to the Debtors and inquired primarily about information the Debtors shared with Patton before filing for bankruptcy protection, which had no bearing on the FCR's appointment. (APP171-179)

<u>**SUMMARY OF THE ARGUMENT**</u>

This Court should affirm the Bankruptcy Court's rulings and orders appointing Patton as the FCR, authorizing Patton to retain Young Conaway as the FCR's counsel, and denying the Insurers' motion to compel. While the Bankruptcy Court rejected the majority-view "disinterested person" standard as the applicable standard for appointment of the FCR in favor of an even more rigorous guardian-*ad-litem* standard, the Bankruptcy Court nonetheless concluded that Patton had undivided loyalty to the future claimants and was qualified and capable of serving as the FCR.

8

The record establishes the absence of any conflict of interest that would disqualify Patton from serving as the FCR or Young Conaway from serving as counsel to the FCR. Additionally, the Bankruptcy Court properly exercised discretion in denying the Insurers' motion to compel on the basis that the motion was dilatory and sought discovery that was not relevant to the FCR's appointment.

## ARGUMENT

**I.**    **THESE APPEALS SHOULD BE DISMISSED BECAUSE THE INSURERS LACK STANDING AND WAIVED THE CONFLICTS OBJECTIONS BOTH EXPRESSLY AND BY FAILING TO TIMELY RAISE THEM BELOW.**

As a threshold matter, most of the Insurers lack standing to challenge Patton's appointment and the retention of Young Conaway. The only two Insurers who possibly have standing agreed to a prospective waiver that estops them from objecting here. By virtue of their collective failure to timely raise the allegedly disqualifying conflicts of interest, the Insurers also have waived the issues they purport to challenge in this appeal.

**A.**    **Three Insurers Demonstrate No Injury and One Is Not a Party.**

As noted in the Debtors' Brief, of the six Insurers, Continental and National Union are the only parties that potentially have standing to challenge Patton's appointment and Young Conaway's retention. There is nothing in the record suggesting that Columbia, Lamorak, and Stonewall have any injury based upon Young Conaway's representation of other insurers in *Warren Pumps*. *See Collick*

*v. Weeks Marine, Inc.*, 2011 WL 1527380, at *6 (D.N.J. Apr. 20, 2011) (defendant in personal injury suit lacked standing to disqualify co-defendant's counsel based on alleged conflict between co-defendant and its insurer); *Ellison v. Chartis Claims, Inc.*, 142 A.D.3d 487, 488 (N.Y. App. Div. 2016) (non-client lacked standing to seek disqualification of law firm). Indeed, the Insurers' brief contains no reference to these Insurers other than in the signature blocks and the definition of "Certain Excess Insurers."

Lexington is not a party to these appeals because it did not file a notice of appeal, nor did it join in any of the objections, discovery and motion to compel below.

### B. Continental and National Union Are Estopped from Objecting and Have Waived Their Objections by Tardily Raising Them.

Patton joins the arguments in the Debtors' Brief that set forth how the prospective waiver in Young Conaway's *Warren Pumps* engagement letter is effective and binds Continental and National Union.

The Bankruptcy Court found that the *Warren Pumps* engagement letter was signed on behalf of Continental and National Union by their counsel. (APP564) The waiver included an express agreement to "not assert that this instant Engagement is a basis for disqualifying the Firm from representing others in future matters in which the Firm is retained to represent a party in Bankruptcy Related

Matters." (APP566) The Bankruptcy Court found that this agreement "clearly covers Mr. Patton's appointment as a future claims representative and YCST's engagement as counsel to him." (APP566-567) Having expressly agreed not to object to Young Conaway representing parties in bankruptcy matters, Continental and National Union are estopped from objecting to Patton's appointment and Young Conaway's retention in these cases.[5]

In addition, the Insurers waived their objections by failing to timely raise the allegedly disqualifying conflicts of interest below. None of them objected to Patton's appointment based upon Young Conaway's *Warren Pumps* representation until after the objection deadline set by the Bankruptcy Court and after the close of the evidentiary hearing. The Insurers' failure to timely object warrants dismissal of these appeals. *See In re 22 Acquisition Corp.,* 2004 WL 870813, at *6 (E.D. Pa. Mar. 23, 2004) ("The general rule that this court does not hear issues for the first time on appeal is well established. 'This general rule applies with added force where the timely raising of the issue would have permitted the parties to develop a factual record.'" (quoting *In re Am. Biomaterials Corp.*, 954 F.2d 919, 927-28 (3d

---

[5] *See Chase Manhattan Bank v. Iridium Africa Corp.*, 307 F. Supp. 2d 608 (D. Del. 2004) (LLC members estopped from denying validity of corporate certificate made on their behalf); *In re DaimlerChrysler AG Secs. Litig.*, 2003 WL 22769051, at *3 (D. Del. Nov. 19, 2003) (plaintiff's agreement to contractual jury waiver provision estopped it from demanding jury trial).

Cir. 1992))); *see also Egersheim v. Gaud*, 2011 WL 13238543, at *5 (D. N.J. Mar. 30, 2011) ("A motion to disqualify counsel may be properly denied on the basis of waiver."); *Bd. of Regents of Univ. of Nebraska v. BASF Corp.*, 2006 WL 2385363, at *10 (D. Neb. Aug. 17, 2006) (motions to disqualify opposing counsel must be made in a timely fashion).

Notwithstanding the foregoing procedural deficiencies, the Bankruptcy Court considered the belated objections of the Insurers and determined that they lacked merit. The record fully supports this decision.

## II. THE BANKRUPTCY COURT APPOINTED THE FCR UNDER A STANDARD MORE RIGOROUS THAN THAT REQUIRED BY THE BANKRUPTCY CODE.

As set forth more fully in the Debtors' Brief, the Bankruptcy Court applied a new standard based on analogizing the FCR to a guardian *ad litem.* The Bankruptcy Court adopted this standard based on *In re Fairbanks Co.*, 601 B.R. 831 (Bankr. N.D. Ga. Apr. 17, 2019), where Patton was the proposed FCR. The *Fairbanks* court concluded that a future claimants' representative must be disinterested, qualified, capable of acting as an objective, independent, and effective advocate for the future claimants, and able to provide diligent, competent and loyal representation. The court found that Patton met that standard and appointed him as the FCR for Fairbanks.

Just as in *Fairbanks*, the Bankruptcy Court below weighed all the evidence and determined that Patton was qualified to serve as the Imerys FCR under the guardian-*ad-litem* standard. The record confirms that the Bankruptcy Court fulfilled its gatekeeping role and reasonably exercised its discretion in appointing Patton as the FCR and approving his retention of Young Conaway. The Insurers argue that Patton should not have been appointed under the guardian-*ad-litem* standard because the standard does not permit waiver of concurrent conflicts. As discussed below, this argument fails because there is no directly adverse conflict requiring waiver and, alternatively, to the extent there is such a conflict, the court can, and did, waive it after careful scrutiny.

## A.    There is No Concurrent Conflict of Interest Under Rule 1.7(a).

The Bankruptcy Court assessed the Insurers' objection under ABA Model Rule 1.7 and concluded there was no disqualifying conflict because the prospective waiver was valid. (APP561-569) The Insurers argue that conclusion was in error, but the record supports affirmance.

Rule 1.7(a) specifies that a concurrent conflict exists for an attorney if:

> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Here, there is no concurrent conflict of interest under either definition in Rule 1.7(a). This matter does not involve the representation of one client who is directly adverse to another under Rule 1.7(a)(1) because there is no direct adversity between the future claimants and the Insurers. With respect to Rule 1.7(a)(2), there also is no significant risk that either client representation will be materially limited by the attorney's other responsibilities. Accordingly, no waiver is required from either the Insurers (although they have already provided an effective waiver that would apply to this matter) or the future claimants.

> **1.** **Young Conaway's Representation of the Insurers in Warren *Pumps* is Not Directly Adverse to Representation of the Future Claimants of the Debtors.**

ABA Formal Opinion 05-435 (2004) confirms that there is no direct adversity here under Rule 1.7. That opinion advises that where a lawyer represents an insurance company in one matter and also represents a plaintiff suing one of that company's insureds in an unrelated proceeding in which the that company is providing the defense, there is not "direct adversity" unless the insurance company is a named party in the second proceeding. The opinion states that:

> Although a liability insurer has an economic interest in the litigation that ordinarily is aligned with the interests of its insured, economic adversity alone between the insurer and the plaintiff in the second action is not . . . the sort of direct adversity that constitutes a concurrent conflict of interest under the Model Rules. Simultaneous representation in unrelated matters of clients whose interests are only economically adverse

14

does not ordinarily constitute a conflict of interest requiring the consent of the respective clients.

*Id*. at p. 2-3.

The instant case is at least three steps removed from the situation of a plaintiff-client suing the insured of an insurer that is a client in an unrelated matter. By definition, future claimants are not suing or otherwise asserting present claims against the Debtors or their insurers. Moreover, the FCR does not represent individual plaintiffs. As the Bankruptcy Court observed, "[The FCR] does not represent current claimants or even individual future claimants, but rather persons who have not yet manifested a disease or illness." (APP567-568)  Finally, the Insurers are not providing defense of the Debtors in these bankruptcy cases and the litigation of individual asbestos claims is subject to Debtors' automatic stay.

> **2. The Bankruptcy Court Found and the Record Confirms There is No Significant Risk of Material Limitation in Representing Either Client.**

With respect to Model Rule 1.7(a)(2), there is no significant risk that Young Conaway's representation of either the Imerys future claimants or the Insurers in *Warren Pumps* will be materially limited by a responsibility to another client or by a personal interest of Patton. Based on the record, including Patton's in-court testimony and the declarations of Patton and Young Conaway, the Bankruptcy Court made the following findings that are entitled to deference:

- The firm's representation of the Insurers in *Warren Pumps* does not constrain Patton's and Young Conaway's ability to represent the future claimants of Imerys. (APP567-568)

- Young Conaway implemented an ethical wall at the court's suggestion and there was no evidence of improper use of client confidences. (APP564-568)

- The types of claims that the carveout from the waiver prohibits Young Conaway from representing are not the types of claims held by future claimants, but are instead claims of the Debtors. (APP567)

The supplemental declarations of Patton and Young Conaway also confirmed that Patton and the Imerys-FCR team at Young Conaway had not provided representation to any insurance companies in coverage litigation. (APP529, SA645)

There is also no material limitation on Patton's and Young Conaway's representations based on client confidences. Rule 1.7(a)(2) protects the client's expectation of confidentiality, specifically that the client's information will not be used against it in a subsequent proceeding. Here, the Insurers do not complain that Young Conaway's *Warren Pumps* team disclosed any confidential information to the Imerys-FCR team. Instead, the Insurers complain that the Debtors allegedly disclosed privileged information to the Imerys-FCR team. Rule 1.7(a)(2) protects the former, not the latter.

The advanced posture of the *Warren Pumps* matter also supports the conclusion that Patton and Young Conaway are not materially limited in the ability to represent the two sets of clients concurrently. The record includes the fact that

the *Warren Pumps* matter is at its end stages and the parties there are negotiating a final judgment order. (SA628-629, 637) As the Debtors' Brief notes, all of the substantial issues in *Warren Pumps* were decided years ago. On November 13, 2019, the Superior Court granted the joint motion to dismiss filed by the plaintiff and Lamorak.[6] The remaining parties are due to submit a status report in early January.[7] That there is minimal activity remaining in *Warren Pumps* further mitigates any risk of a limitation on the ability of Patton and Young Conaway to represent the future claimants of Imerys.

**B.  Exceptions Under Rule 1.7(b) Permit the Concurrent Representation.**

The foregoing demonstrates that there is not a concurrent conflict under Rule 1.7(a). However, even a concurrent conflict is not necessarily disqualifying because Rule 1.7(b) specifically contemplates that concurrent conflicts can be waived if four criteria are met:

> Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;

---

[6] *See Viking Pump, Inc. & Warren Pumps, LLC v. Century Indemnity Co.*, C.A. No. 10C-06-141-PRW CCLD (Del. Super.), Docket No. 1363.
[7] *Id.,* Docket No. 1364, Nov. 26, 2019, Letter to court requesting permission to provide further status update on Jan. 8, 2020.

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.

As set forth below, to the extent Young Conaway has a concurrent conflict by virtue of the *Warren Pumps* representation and Patton's role as FCR, it is not disqualifying because the four criteria of Rule 1.7(b) are met.

### 1. The Record Shows That Rules 1.7(b)(2) and (b)(3) Are Satisfied.

The Insurers' brief challenges whether Rule 1.7(b)(4) is satisfied, and we will discuss that below, along with Rule 1.7(b)(1). With respect to Rule 1.7(b)(2), the Insurers have not cited (and Patton and Young Conaway are not aware of) any law that prohibits the representation. As to Rule 1.7(b)(3), this case does not involve Patton or Young Conaway asserting a claim by one client against another in the same litigation or another proceeding before a tribunal.

### 2. Rule 1.7(b)(1) is Satisfied Because the Record Confirms Patton's Unimpaired Ability to Represent the Future Claimants.

Even assuming there is a concurrent conflict (and there is not, as set forth above), the representation may proceed under Rule 1.7(b)(1) if Patton and Young Conaway reasonably believe that they will be able to provide competent and diligent representation to each affected client.

The Bankruptcy Court found, based on Patton's and Young Conaway's declarations and other items in the record, that the firm's representation of the Insurers in *Warren Pumps* does not constrain Patton's and Young Conaway's ability to represent the future claimants of Imerys. (APP567-568) That Patton and Young Conaway can provide competent and diligent representation to both the Insurers in *Warren Pumps* and to the Imerys future claimants is buttressed by other facts in the record: Patton and his Imerys team did not represent any insurers, there was no overlap of Young Conaway personnel on the *Warren Pumps* matter and these bankruptcy cases, Young Conaway's erection of an ethical wall, and the *Warren Pumps* matter is nearly concluded. (APP529-530, APP534-535, SA645-646)

Disqualification under Rule 1.7(b)(1) is appropriate only where a court finds that the lawyer's ability to act as a zealous and effective advocate is compromised or that the representation creates a substantial possibility of providing an unfair advantage to one client because of the attorney's representation of another client. *Rail Freight*, 965 F. Supp. 2d at 110; *see also Larson v. Dumke*, 900 F.2d 1363, 1366 (9th Cir. 1990), *cert. denied*, 498 U.S. 1012 (1990) ("An adequate representative [under Fed. R. Civ. P. 23.1] must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class."). Nothing in the record – other

than the Insurers' unsupported allegations - calls into question the ability of Patton and Young Conaway to provide competent and diligent representation to the Insurers in the *Warren Pumps* matter and to the future claimants in the Imerys bankruptcy cases. To the contrary, the Bankruptcy Court concluded there was no constraint on Patton's or Young Conaway's ability to represent the future claimants. (APP567-568)

> **3.** **Rule 1.7(b)(4) is Satisfied Because, To the Extent There is a Concurrent Conflict, It Is Waivable and Has Been Waived.**

The final criteria to establish there is no disqualifying concurrent conflict is the requirement of Rule 1.7(b)(4) that each affected client gives informed consent, confirmed in writing. Here, the conflict was waivable, and was waived by the Insurers and by the Bankruptcy Court.

> **i.** **The Insurers' Waived the Concurrent Conflict Prospectively in the *Warren Pumps* Engagement Letter.**

As discussed in the Debtors' Brief, the record supports the Bankruptcy Court's conclusion that the applicable Insurers' prospective waiver in Young Conaway's *Warren Pumps* engagement letter was effective and applied to permit Patton's service as the FCR and Young Conaway's retention as his counsel. Thus, the Insurers have given informed consent confirmed in writing as required by Rule 1.7(b)(4).

### ii. The Bankruptcy Court Waived Any Concurrent Conflict on Behalf of the Future Claimants.

To the extent a waiver by the unknown future claimants was necessary in these cases, the Bankruptcy Court effected that waiver on their behalf by appointing Patton as the FCR and approving his retention of YCST as counsel. The Code and precedent accord broad discretion to the Bankruptcy Court in determining whether a conflict exists and whether it is disqualifying, just as they accord broad discretion to the Bankruptcy Court in appointing an FCR. The Bankruptcy Court considered the objections of the U.S. Trustee and the Insurers, conducted a fact-intensive analysis that included directing Patton to supplement his disclosures and *in camera* review of the *Warren Pumps* engagement letter, and concluded in two detailed rulings that Patton was qualified to serve as FCR and approved his retention of Young Conaway.

11 U.S.C. § 524(g) does not prescribe the process or standard for appointing an FCR, leaving those matters to the discretion of the court. That deference is consistent with the bankruptcy court's role as a gatekeeper in approving the retention of professionals for a debtor's estate. *See In re Ginaldi*, 463 B.R. 314, 318 n.7 (Bankr. E.D. Pa. 2011) ("[T]he bankruptcy court has the obligation to determine whether retention of the professional is in the best interest of the estate.").

In selecting the standard for appointing Patton as the FCR, the Bankruptcy Court below found that the future claimants' representative is analogous to a guardian *ad litem*. An FCR is also analogous to a named class representative in the class action context (although in that context, at least some of the class members are identifiable, unlike unknown future claimants under section 524(g)). Both of those scenarios involve persons who require a representative because they are unable to speak for themselves.

The Third Circuit Court of Appeals has recognized that the court is a fiduciary charged with ensuring that absent persons in class actions are adequately represented. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 429-30 (3d Cir. 2016), *cert. denied*, 137 S.Ct. 591 (2016) (court had "an independent obligation to protect the interests of the class"); *In re Cendant Corp. Secs. Litig.*, 404 F.3d 173, 187-88 (3d Cir. 2005) ("In traditional common fund cases, the court acts almost as a fiduciary for the class, performing some of the roles-i.e., monitoring and compensating class counsel-that clients in individual suits normally take on themselves."); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995), *cert. denied*, 116 S.Ct. 88 (1995) ("[T]he court plays the important role of protector of the absentees' interests, in a

sort of fiduciary capacity, by approving appropriate representative plaintiffs and class counsel.").[8]

Section 524(g)(4)(B)(ii) requires the court to conclude that, independently of the work of the FCR, the plan is fair and equitable to future claimants, just as a court presiding over a class action must find that the named representatives and counsel for a class of identifiable claimants provided adequate representation of the whole class before the court can approve a proposed settlement. *See NFL Players,* 821 F.3d at 436 (approval of proposed class action settlement "'is left to the sound discretion of the district court' which 'bear[s] the important responsibility of

---

[8] Other courts have also found that they act as a fiduciary to absent class members. *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) ("Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. The court cannot accept a settlement that the proponents have not shown to be fair, reasonable, and adequate."); *Hughes v. InMotion Entmt.*, 2008 WL 3889725, at *8-9 (W.D. Pa. Aug. 18, 2008) (recognizing court's duty to determine whether settlement "passed muster in terms of fairness, adequacy and reasonableness to the class members who did not participate in the negotiations and drafting"); *In re Oracle Secs. Litig.*, 131 F.R.D. 688, 691 (N.D. Cal. 1990) ("Yet the court bears fiduciary responsibilities to the class. Under Fed. R. Civ. P. 23(d), the court may make appropriate orders 'for the protection of the members of the class.'"); *Subero v. Hess Oil Virgin Islands Corp.*, 1981 WL 705554, at *1 (D. V.I. June 3, 1981) ("A guardian ad litem has no power to bind an incompetent to admissions of fact or otherwise surrender rights by stipulation or waiver. The guardian ad litem is merely an officer of the court and any settlement negotiated by him is merely a proposed settlement, pending the court's independent assessment and approval.").

protecting absent class members . . . by the court's assuring that the settlement represents adequate compensation for the release of the class claims'").

The Bankruptcy Court thus acts a fiduciary for the future claimants and is the ultimate protector of their rights in a section 524(g) case, and has broad discretion in evaluating professional retentions and alleged conflicts. The bankruptcy court has the power, authority, and discretion to appoint a proposed legal representative if the court finds that the candidate is capable of providing adequate representation to the future claimants. That is what occurred below, where the Bankruptcy Court considered and rejected the Insurers' objections, found Patton to be capable of serving as the FCR (because he was independent of the Debtors and other parties in interest and his loyalty was to the future claimants), and entered orders approving his appointment and retention of counsel.

### C. The Bankruptcy Court Properly Exercised its Discretion in Appointing Patton, and its Findings Should Be Accorded Deference

#### 1. The Bankruptcy Court Has Broad Discretion to Evaluate a Professional's Alleged Conflicts of Interests.

The Bankruptcy Court has broad discretion in evaluating alleged conflicts of interest. *In re BH & P, Inc.*, 949 F.2d 1300, 1316-17 (3d. 1991) ("As we have said, denomination of a conflict as 'potential' or 'actual' and the decision concerning whether to disqualify a professional based upon that determination . . .

24

are matters committed to the bankruptcy court's sound exercise of discretion. In order to ensure proper review in these cases, those factors underlying the exercise of discretion 'must be factually substantiated upon the evidentiary record.'" (quoting *In re Global Marine, Inc.*, 108 B.R. 998, 1004 (Bankr. S.D. Tex. 1987)); *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236-37 (Bankr. E.D. Pa. 1988) ("The ultimate determination of whether there is a disqualifying conflict and whether the representation is in the best interest of the estate lines [*sic*] within the discretion of the court.").

Discretion is appropriately accorded to the Bankruptcy Court's findings because it is best situated to evaluate whether a disqualifying conflict exists. *In re BH & P, Inc.,* 949 F.2d at 1300 (3d. 1991) (bankruptcy court "is on the front line" and "in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails."); *In re Radnor Holdings Corp.*, 528 B.R. 245, 251 (D. Del. 2014), *aff'd*, 629 Fed. Appx. 277 (3d Cir. 2015), *cert. denied*, 137 S. Ct. 294 (2016) ("The challenged findings hinged, in part, on a credibility determination regarding the evidence presented to the bankruptcy court. As the trier of fact, the bankruptcy court was in a better position to evaluate the credibility of the witnesses than is this court.").

According discretion to the trier of fact on conflict determinations is particularly important in mass tort matters. Because such matters tend to be

"intensely complex [and involve] specialized issues that require experienced, knowledgeable counsel," the court requires discretion to "fashion equitable solutions to a conflict problem." *Wyeth v. Abbott Labs.*, 692 F. Supp. 2d 453, 458 (D. N.J. 2010); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 114-15 (D.C. Cir. 2013) (noting rules of professional conduct cannot be "applied mechanically" to class action litigation).

**2.    Evaluating the Existence and Effect of an Alleged Conflict Requires Consideration of All Relevant Facts.**

The Bankruptcy Code does not define the term "conflict of interest." As the Third Circuit has held, "denomination of a conflict as 'potential' or 'actual'" is a "matter[] committed to the bankruptcy court's sound exercise of discretion[.]" *Marvel Entmt.*, 140 F.3d at 476. The analysis requires consideration of all facts relevant to an alleged conflict. *See In re Jade Mgmt. Servs.*, 386 Fed. Appx. 145, 148 (3d Cir. 2010) ("Distinguishing between potential and actual conflicts is a flexible enterprise, and necessarily is one that is governed by the factual niceties of each particular case.").

Because the evaluation is fact-specific, the Third Circuit has "eschew[ed] bright-line rules" in determining whether a situation poses an actual or potential conflict. *See Jade Mgmt.*, 386 Fed. Appx. at 149. As a general rule, however, the Third Circuit has held that "'a conflict is actual, and hence *per se* disqualifying, if

it is likely that a professional will be placed in a position permitting [her] to favor one interest over an impermissibly conflicting interest." *Id*. at 148 (quoting *In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir. 2002)); *Radnor Holdings*, 528 B.R. at 249 (same). As discussed herein, Young Conaway's representation of certain of the Insurers in *Warren Pumps* does not give rise to an actual conflict with Patton serving as the FCR (or Young Conaway serving as his counsel).

### 3.  Disqualification is Disfavored Because of its Tactical Use.

The presence of a potential conflict or violation of a professional rule does not automatically require disqualification; rather, any remedial measures should be determined on a case-by-case basis. *See BH & P*, 949 F.2d at 1313 ("Not every conceivable conflict must result in sending [a professional] away to lick his wounds." (quoting *In re Martin*, 817 F.2d at 183)); *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 583 (D. Del. 2001). ("[D]isqualification is a severe sanction. Although disqualification is ordinarily the result of a finding that an ethical rule has been violated, disqualification is never automatic. Moreover, the Third Circuit has noted that a district court has 'wide discretion in framing its sanctions to be just and fair to all parties involved.'" (quoting *U.S. v. Miller*, 624 F. 2d 1198, 1201 (3d Cir. 1980)); *In re Muma Servs., Inc.*, 286 B.R. 583, 587 (Bankr. D. Del. 2002). ("Disqualification is never

automatic. Rather, the court is to 'consider the ends that the disciplinary rule is designed to serve and any countervailing policies.'").

Disqualification motions are disfavored where opponents employ them as a tactical measure to block a worthy opponent and cause delay and distraction. *See Elonex*, 142 F. Supp. 2d at 584 ("[M]otions to disqualify are viewed with caution because of the potential for their misuse. It is well known to this court, and many others, that motions for disqualification are frequently filed as 'dilatory tactics intended to divert the litigation from attention to the merits.'" (quoting *SWS Fin. Fund A v. Salomon Bros., Inc.*, 790 F. Supp. 1392, 1401 (N.D. Ill. 1992)); *Lanard Toys Ltd. v. Dolgencorp LLC*, 2016 WL 7326855, at *7 (M.D. Fla. Dec. 16, 2016) ("[B]ecause a disqualification motion may be used to harass or for tactical advantage, it should be viewed with caution.").

In line with the foregoing authorities, the Bankruptcy Court considered all facts relevant to Patton's appointment, having reviewed his written declarations and weighed his in-court testimony. The court then reasonably exercised its discretion in appointing Patton.

### III. THE RECORD CONFIRMS PATTON'S APPOINTMENT WAS APPROPRIATE UNDER THE GENERALLY ACCEPTED STANDARD OF DISINTERESTEDNESS.

As the Debtor's Brief sets forth, virtually every other court to address appointment of an FCR has applied the disinterestedness test. The record below

supports affirming the appointment of Patton as the FCR under the disinterestedness standard. The Bankruptcy Court's well supported findings confirm that Patton and Young Conaway have no interest materially adverse to the future claimants and that they have no disqualifying conflict of interest under Model Rule 1.7, as discussed above.

### A. The Disinterestedness Inquiry Focuses on Whether Patton Has an Interest <u>Materially</u> Adverse to Future Claimants, and the <u>Record</u> Confirms He Does Not.

The focus of the inquiry regarding the application of the disinterestedness standard to the FCR is on 11 U.S.C. § 101(14)(C). A professional can hold an adverse interest and yet be disinterested so long as the interest is not "material". *In re Pinebrook, LLC*, 441 B.R. 67, 69 (Bankr. E.D. Va. 2009) ("Congress clearly anticipated the possibility of there being some adversity. Congress clearly felt that not every adversity was a disqualification. The adversity must be material."); *see also In re Marvel Entmt. Grp., Inc.,* 140 F.3d 463, 477 (3d Cir. 1998) ("A plain reading of [§ 101(14)] suggests that one is a 'disinterested person' only if he has no interest that is materially adverse to a party in interest in the bankruptcy.'").

As set forth in the Debtors' Brief, the analysis for Patton's appointment as the FCR – a role in which he serves as a fiduciary, but not the attorney for future claimants - focuses on whether he has any personal interest that is materially

adverse to the future claimants. The Insurers have not asserted that Patton has any personal conflict of interest, let alone one that is material.

Even if non-personal interests based upon Young Conaway's representation of certain of the Insurers in *Warren Pumps* are considered for purposes of section 101(14)(C), neither Patton nor Young Conaway has an interest <u>materially</u> adverse to the future claimants.  Ins. Br. at 22. The Bankruptcy Court imputed Young Conaway's representations to Patton when it found that, subject to supplementing his declaration to confirm certain points, Patton was independent and had "undivided loyalty" to the future claimants. (APP525-527, APP566) Patton is unconstrained in his ability to serve as the FCR. (APP564, APP567) These findings, which are entitled to deference, demonstrate that Patton and Young Conaway have no interest that is materially adverse to the future claimants based upon the firm's *Warren Pumps* representation.

**B.    Precedent From the Third Circuit Supports The Bankruptcy Court's Appointment of Patton and Retention of Young Conaway.**

The Third Circuit addressed an analogous situation in *Marvel Entertainment* – albeit one involving a trustee seeking to retain counsel under section 327 instead of instead of an FCR under section 524(g) – and found no materially adverse interest. There, the district court had appointed John Gibbons to serve as trustee for the estate but denied Gibbons' retention of his own law firm to serve as his

counsel, finding that the firm's prior representation of Chase Manhattan Bank in an unrelated matter disqualified the firm from serving as the trustee's counsel in the bankruptcy case where Chase was a creditor. *Id*. at 466-67.

Gibbons had disclosed that his firm's representation of Chase was in an unrelated matter, generated about 0.1% of the firm's revenue that year, and was virtually complete when Gibbons was appointed trustee, and that Chase had granted the firm an unconditional waiver of conflicts. *Id*. at 469. The firm's disclosures were materially identical. *Id*. Certain creditors objected to the firm's retention based on its relationship with Chase, challenging its disinterestedness under section 327(a). *Id*. By the time the court held a hearing, the firm's representation of Chase had ended, resolving the actual conflict but leaving, the creditors argued, an "appearance" that the firm may act partially. *Id*.

The Court of Appeals affirmed Gibbons' appointment as trustee without addressing whether he individually was disinterested and reversed the denial of the trustee's retention of his firm as counsel. Clarifying the disinterestedness standard for a trustee's counsel under 11 U.S.C. § 327(a), the Court of Appeals held that a court has discretion in disqualifying counsel based on a potential conflict of interest, but the appearance of conflict alone is not sufficient for disqualification. *Id*. at 476. The court rejected the creditors' objections to the trustee's retention of counsel, finding there was no actual or potential conflict because the firm had not

represented Chase in a matter related to the bankruptcy case and had ended its relationship with Chase in anticipation of Gibbons being appointed trustee. *Id*. at 477. The district court erred in disqualifying the trustee's proposed counsel based on based on purported "appearance" of possible partiality because that was not an actual or potential conflict. *Id*. at 477.

*Marvel* compels a finding that neither Patton nor Young Conaway have a materially adverse interest. As discussed above, there is no direct adversity between Young Conaway's representation of the Imerys future claimants and its representation of certain of the Insurers in *Warren Pumps*; there also is no material limitation on Patton's and Young Conaway's ability to represent the respective clients. At most, these representations pose a potential conflict. The *Warren Pumps* case is unrelated to these bankruptcy cases and is virtually complete, merely awaiting the entry of a final judgment order. (ECF 588 at 5-6) Like the proposed trustee in *Marvel*, Patton disclosed Young Conaway's *Warren Pumps* representations and that it had a prospective waiver from the Insurers. Young Conaway made the same disclosures. Young Conaway has also implemented an ethical wall, which further supports the conclusion that there is no disqualifying conflict.

Moreover, there is no disabling conflict because, as the Bankruptcy Court found, the firm's representation of the Insurers in *Warren Pumps* does not

constrain Patton's and Young Conaway's ability to represent the future claimants of Imerys. (APP567-568)

## IV. THE BANKRUPTCY COURT PROPERLY APPROVED PATTON'S RETENTION OF YOUNG CONAWAY.

The Insurers do not independently challenge Young Conaway's retention as the FCR's counsel. That issue is completely omitted from their brief's "Statement of Issues," and their appendix does not even include the retention order. *See* Ins. Br. 8-9; APP1-745 (omitting ECF No. 669). Young Conaway's retention is therefore not validly part of this appeal.

Moreover, as noted above, the Insurers did not timely object below to Patton's proposed retention of Young Conaway as his counsel. The then-proposed FCR filed the application to retain Young Conaway on February 27, setting an objection deadline of March 13 in accordance with the local rules. (SA140) The Insurers' March 13 limited objection to appointment of Patton as FCR raised no concern about Young Conaway's retention. Not until their May 17 belated supplemental objection to the form of order appointing Patton as FCR did the Insurers object to Young Conaway's retention (SA603), but they raised no arguments against Young Conaway's retention apart from those raised against Patton's appointment.

The Insurers' purported objection to the FCR's retention of Young Conaway fails for the same reasons set forth above (and in the Debtors' Brief) delineating

why the Bankruptcy Court properly found there was no disqualifying conflict preventing appointment of Patton as the FCR. There is no conflict based on Young Conaway's supposed representation of talc claimants because the firm does not represent any. (APP563). Young Conaway provided the same disclosures as Patton, and the applicable Insurers' prospective waiver is effective as to Young Conaway. (APP568).

Young Conaway also does not have an interest materially adverse to the future claimants because, as discussed above, there is no direct adversity (and thus no actual conflict) between the future claimants and the Insurers, there is no material limitation on Young Conaway's ability to represent both sets of clients, and any alleged concurrent conflict has been waived by the Insurers and the Bankruptcy Court.[9]

Accordingly, the Court should affirm the order approving Patton's retention of Young Conaway. *See Marvel Entmt.*, 140 F.3d at 478 (reversing district court's denial of trustee's retention of his law firm because "[t]here is an irreconcilable conflict with dictates of good reason in the notion that [the trustee], as the head of the Firm, is eligible to serve as trustee, but the Firm is ineligible to serve as his counsel.").

_____

[9] Alternatively, upon the court appointing him as the FCR, Patton can waive a concurrent conflict of his selected counsel.

## V. THE BANKRUPTCY COURT PROPERLY EXERCISED DISCRETION IN ITS DISCOVERY RULINGS.

As set forth in the Debtors' Brief, the Insurers sought discovery only from the Debtors, the discovery was not relevant to Patton's appointment as FCR, and the Insurers' motion to compel was dilatory. Accordingly, the Bankruptcy Court's denial of the motion to compel should be affirmed as a proper exercise of its "broad discretion in managing discovery and case schedules." *In re Melilo*, 2015 WL 6151230, at *2 (D. N.J. Oct. 19, 2015).

## CONCLUSION

For the foregoing reasons, Appellee James L. Patton, Jr., in his capacity as the Future Claimants' Representative, respectfully requests that the Court affirm the Bankruptcy Court's rulings and orders appointing Patton as the FCR, approving Patton's retention of Young Conaway as his counsel, and denying the Insurers' motion to compel, and grant such other and further relief as required in the interests of justice.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Edwin J. Harron*
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Sara Beth Kohut (No. 4137)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
           eharron@ycst.com
           skohut@ycst.com

Counsel to Future Claimants' Representative

Dated: December 16, 2019

# CERTIFICATE OF COMPLIANCE

As required by Federal Rule of Bankruptcy Procedure 8015(h), I certify that this brief complies with the type-volume limitation of Rule 8015(a)(7)(B) because this brief contains 7,899 words, excluding any items exempted by Rule 8015(g). I further certify that this brief complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

*/s/ Edwin J. Harron*
Edwin J. Harron

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2019, the *Joinder and Response Brief of Appellee James L. Patton, Jr. in His Capacity as the Future Claimants' Representative* was caused to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Edwin J. Harron*
Edwin J. Harron