# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| IMERYS TALC AMERICA, INC., et al., | : |
| | : BK Case No.  No. 19-10289 (LSS) |
| Debtors. | : |
| | : |
| CYPRUS HISTORICAL EXCESS | : C.A. No. 19-944 (MN) |
| INSURERS, | : BAP No. 19-39 |
| | : |
| Appellant, | : C.A. No. 19-1120 (MN) |
| | : BAP No. 19-42 |
| | : |
| v. | : C.A. No. 19-1121 (MN) |
| | : BAP No. 19-43 |
| IMERYS TALC AMERICA, INC., et al. | : |
| | : C.A. No. 19-1122 (MN) |
| Appellees. | : BAP No. 19-44 |

---

## APPELLANTS' CERTAIN EXCESS INSURERS' REPLY BRIEF ON APPEAL FROM A BANKRUPTCY COURT ORDER APPOINTING JAMES PATTON OF YOUNG CONAWAY AS FUTURE CLAIMANTS' REPRESENTATIVE

---

**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, NY  10036
Telephone: 212-326-2000
tschiavoni@omm.com
gsvirsky@omm.com
jpanchok-berry@omm.com

**STAMOULIS & WEINBLATT LLC**
800 N. West Street, Third Floor
Wilmington, Delaware  19801
Telephone:    302 999 1540
Facsimile:    302 762 1688
stamoulis@swdelaw.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I.      THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW
IN HOLDING THAT PATTON'S CONFLICTS WITH RESPECT
TO FUTURE CLAIMANTS COULD BE WAIVED. ........................................................ 3

      A.    Under the guardian-ad-litem standard, a fiduciary cannot waive
conflicts of interest for the absentee parties he or she represents. ............ 3

      B.    The FCR and the Debtors should not be allowed to advocate an
alternative to the guardian-ad-litem test, an issue that they never
appealed. ................................................................................................ 5

      C.    In any event, Patton has an "actual" conflict with respect to future
claimants under Rule 1.7 and Section 101(14) does not eschew
ethical obligations prohibiting conflicts of interest. ................................ 8

II.     THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW
IN EXCUSING PATTON FROM THE PROHIBITION ON
ACTUAL CONFLICTS THAT RULE 1.7(A)(1) IMPOSES. ........................................... 11

      A.    Appellate courts review de novo whether
conflicts exist under Rule 1.7(a)(1). ...................................................... 11

      B.    Rule 1.7 applies here, and Appellees
cite no law holding that it does not. ...................................................... 12

      C.    Certain Excess Insurers did not prospectively waive Patton's
conflict because this case and Warren are substantially related. ............. 15

      D.    Certain Excess Insurers did not knowingly waive
the conflict of interest here and could not have
because Patton never disclosed his conflicts. ......................................... 19

      E.    Neither the FCR nor the Debtors appealed the bankruptcy court's
decision that Section 327 does not apply here. ....................................... 20

III.    THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW
BY IGNORING THE FCR'S INADEQUATE DISCLOSURES. .......................................... 21

IV.    CERTAIN EXCESS INSURERS HAVE STANDING
BECAUSE THEY ARE AGGRIEVED BY PATTON'S CONFLICTS. ................................. 24

CONCLUSION ...................................................................................................................... 26

OMM_US:77248362.13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Stewart Title Guar.*,
    246 F.R.D. 218 (E.D. Pa. 2007) ...................................................................... 19

*Amchem Products, Inc v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................... 10

*AT&T Mobility, LLC v. Yeager*,
    143 F. Supp. 3d 1042 (E.D. Cal. 2015) ............................................................ 6

*Bacon v. Mandell*,
    2012 WL 4105088 (D.N.J. Sept. 14, 2012) ...................................................... 4

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*,
    321 B.R. 147 (D.N.J. 2005) ...................................................................... 9, 24

*Cont'l Grp., Inc. v. Amoco Chems. Corp.*,
    614 F.2d 351 (3d Cir. 1980) ........................................................................ 15

*duPont v. S. Nat. Bank of Houston, Tex.*,
    771 F.2d 874 (5th Cir. 1985) .......................................................................... 6

*El Paso Natural Gas Co. v. Neztsosie*,
    526 U.S. 473 (1999) ............................................................................ 5, 20, 23

*End of Road Tr. v. Terex Corp.*,
    2002 WL 242464 (D. Del. Feb. 20, 2002) ...................................................... 13

*Fed. Ins. Co. v. Grace*,
    2004 WL 5517843 (D. Del. Nov. 22, 2004) .................................................... 24

*IBM v. Levin*,
    579 F.2d 271 (3d Cir. 1978) ........................................................................ 13

*In re A.T.*,
    744 N.W.2d 657 (Iowa Ct. App. 2007) ............................................................ 4

*In re Amatex Corp.*,
    755 F.2d 1034 (3d Cir. 1985) .......................................................................... 6

*In re Arlan's Dep't Stores, Inc.*,
    615 F.2d 925 (2d Cir.1979) .......................................................................... 23

*In re Armstrong World Indus., Inc.*,
    No. 00–4471 (Bankr. Del. filed March 2, 2002) .............................................. 21

ii

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re ASHINC Corp.*,
   683 F. App'x 131 (3d Cir. 2017) ............................................................. 16

*In re B.E.S. Concrete Prods., Inc.*,
   93 B.R. 228 (Bankr.E.D.Cal.1988) .......................................................... 22

*In re Berger McGill*,
   242 B.R. 413 (Bankr. S.D. Ohio 1999) ..................................................... 9

*In re BH & P, Inc.*,
   103 B.R. 556 (Bankr. D.N.J. 1989) .......................................................... 22

*In re BH & P, Inc.*,
   949 F.2d 1300 (3d Cir. 1991) ............................................................ passim

*In re Coastal Equities*,
   39 B.R. 304 (Bankr. S.D. Cal. 1984) ....................................................... 22

*In re Combustion Eng'g*,
   366 F. Supp. 2d 224 (D. Del. 2005) ........................................................ 16

*In re Combustion Eng'g, Inc.*,
   391 F.3d 190 (3d Cir. 2004) ............................................................... 6, 7

*In re Combustion Eng'g*,
   No. 03–10495 (Bankr. Del. filed March 17, 2003) .................................. 21

*In re Congoleum Corp.*,
   426 F.3d 675 (3d Cir. 2005) .............................................................. passim

*In re Congoleum Corpo., et al.*,
   No. 03–51524 (Bankr. N .J. filed February 18, 2004) ............................ 21

*In re Duro Dyne Nat'l Corp.*,
   2019 WL 4745879 (D.N.J. Sept. 30, 2019) ......................................... 6, 25

*In re E. Sugar Antitrust Litig.*,
   697 F.2d 524 (3d Cir. 1982) .................................................................. 19

*In re eToys, Inc.*,
   331 B.R. 176 (Bankr. D. Del. 2005) ....................................................... 24

*In re EWC, Inc.*,
   138 B.R. 276 (Bankr. W.D. Okla. 1992) ................................................. 22

*In re EWC, Inc.*,
   1992 WL 53647 (Bankr. W.D. Okla. Mar. 18, 1992) .............................. 22

iii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Fairbanks Co.*,
   601 B.R. 831 (Bankr. N.D. Ga. 2019) ................................................................. 6

*In re Federal-Mogul Glob. Inc.*,
   No. 01–10578 (Bankr. Del. filed February 11, 2002).......................................... 21

*In re Filene's Basement, Inc.*,
   239 B.R. 845 (Bankr. D. Mass. 1999) ................................................................. 22

*In re Futuronics Corp.*,
   655 F.2d 463 (2d Cir.1981) ................................................................................. 23

*In re G-I Holdings, Inc.*,
   328 B.R. 691 (D.N.J. 2005) ................................................................................... 7

*In re Glob. Marine, Inc.*,
   1987 WL 61219 (Bankr. S.D. Tex. Sept. 28, 1987) ............................................ 15

*In re Imerys*,
   Case No. 19-10289 ................................................................................................. 1

*In re Infotechnology, Inc.*,
   582 A.2d 215 (Del. 1990) .................................................................................... 24

*In re Johns-Manville Corp.*,
   36 B.R. 743 (Bankr. S.D.N.Y. 1984), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985) ............................... 7

*In re Kendavis Indus. Int'l, Inc.*,
   91 B.R. 742 (Bankr. N.D. Tex. 1988)................................................................. 22

*In re Kero–Sun, Inc.*,
   58 B.R. 770 (Bankr. D. Conn. 1986) .................................................................. 22

*In re Lee*,
   1988 WL 130076 (Bankr. C.D. Cal. Nov. 22, 1988)........................................... 22

*In re Lee*,
   94 B.R. 172 (Bankr. D. Cal. 1988) ..................................................................... 22

*In re Marine Power & Equip. Co., Inc.*,
   67 B.R. 643 (Bankr. W.D. Wash.1986)............................................................... 22

*In re Marvel Entm't Grp., Inc.*,
   140 F.3d 463 (3d Cir. 1998) ............................................................................ 3, 20

*In re Michigan Gen. Corp.*,
   78 B.R. 479 (Bankr. N.D. Tex. 1987).................................................................. 22

iv

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*In re Mid-Valley, Inc.*,
   305 B.R. 425 (Bankr. W.D. Pa. 2004) ........................................................................ 12, 13

*In re Pittsburgh Corning Corp.*,
   308 B.R. 716 (Bankr. W.D. Pa. 2004) ........................................................................ 21, 24

*In re Pressman-Gutman Co., Inc.*,
   459 F.3d 383 (3d Cir. 2006) .............................................................................................. 24

*In re Reliant Energy Channelview, LP*,
   403 B.R. 308 (D. Del. 2009), *aff'd*, 594 F.3d 200 (3d Cir. 2010) ..................................... 23

*In re Saturley*,
   131 B.R. 509 (Bankr. D. Me. 1991) ................................................................................... 22

*In re Sharon Steel Corp.*,
   871 F.2d 1217 (3d Cir. 1989) ....................................................................................... 3, 11

*In re The Babcock & Wilcox Co.*,
   No. 00–10992 (Bankr. E.D. La. filed October 4, 2000) ..................................................... 21

*In re Thompson*,
   54 B.R. 311 (Bankr. N.D. Ohio 1985) ............................................................................... 22

*In re Universal Bldg. Prod.*,
   486 B.R. 650 (Bankr. D. Del. 2010) .............................................................................. 9, 22

*In re UNR Indus., Inc.*,
   29 B.R. 741 (N.D. Ill. 1983) .............................................................................................. 7

*In re UNR Indus., Inc.*,
   46 B.R. 671 (Bankr. N.D. Ill. 1985) .................................................................................. 8

*In re UNR Indus., Inc.*,
   71 B.R. 467 (Bankr. N.D. Ill. 1987) .................................................................................. 4

*In re World Trade Ctr. Disaster Site Litig.*,
   834 F. Supp. 2d 184 (S.D.N.Y. 2011), *vacated in part*, 754 F.3d 114 (2d Cir.
   2014) .................................................................................................................................. 10

*In the Matter of Georgetown Kettering, Ltd.*,
   750 F.2d 536 (6th Cir.1984) .............................................................................................. 23

*Jacques H. Geisenberger, Jr., P.C. v. DeAngelis*,
   2011 WL 4458779 (M.D. Pa. Sept. 23, 2011) ................................................................... 22

v

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kayes v. Pac. Lumber Co.*,
  51 F.3d 1449 (9th Cir. 1995), *cert. denied*, 516 U.S. 914 (1995)........................................... 19

*Kollsman, a Div. of Sequa Corp. v. Cohen*,
  996 F.2d 702 (4th Cir. 1993) ..................................................................................................... 6

*Matter of Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd sub nom. Kane v. Johns-Manville
  Corp.*, 843 F.2d 636 (2d Cir. 1988) (Bankr. S.D.N.Y. 1986) ..................................................... 4

*McDonald v. Hammons*,
  936 F. Supp. 86 (E.D.N.Y. 1996) .............................................................................................. 4

*Neilson v. Colgate-Palmolive Co.*,
  199 F.3d 642 (2d Cir. 1999) ...................................................................................................... 6

*Palumbo v. Tele-Commc'ns, Inc.*,
  157 F.R.D. 129 (D.D.C. 1994)................................................................................................ 3, 9

*Pasternak v. Glazer*,
  1996 WL 549960 (Del. Ch. Sept. 24, 1996), *appeal dismissed and remanded*,
  693 A.2d 319 (Del. 1997) ......................................................................................................... 16

*Selkridge v. United of Omaha Life Ins. Co.*,
  360 F.3d 155 (3d Cir. 2004) ..................................................................................................... 23

*TQ Delta, LLC v. ADTRAN, Inc.*,
  2019 WL 3304705 (D. Del. July 23, 2019) .............................................................................. 16

*Tutein v. Insite Towers, LLC*,
  572 F. App'x 107 (3d Cir. 2014) ..................................................................................... 5, 20, 23

*United States v. Gordon*,
  334 F. Supp. 2d 581 (D. Del. 2004)............................................................................................ 3

**Other Authorities**

ABA Formal Op. 02-426 ............................................................................................................... 13

ABA Formal Op. 05-435 ............................................................................................................... 17

ABA Formal Op. 05-436 ............................................................................................................... 16

Judge Alvin K. Hellerstein, *Democratization of Mass Tort Litigation Judicial
  Management to Enhance Claimants' Participation and Control*,
  41 Brief 16, Summer 2012........................................................................................................ 10

OMM_US:77248362.13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Model R. of Prof'l Conduct 1.7(a)............................................................................................... 13

Model R. Prof'l Conduct 1.7..................................................................................... 12, 13, 14, 20

Model R. Prof'l Conduct, cmt. [3].............................................................................................. 16

**Rules**

D. Del. LR 83.6(d) ........................................................................................................................ 9

DE R RPC Rule 1.10(a) .............................................................................................................. 10

Del. Bankr. L.R. 1001–1(b) ......................................................................................................... 9

OMM_US:77248362.13

## PRELIMINARY STATEMENT[1]

The starting point for resolving the instant appeal is whether an FCR as a fiduciary for absentee clients may waive his conflicts for the future claimants he represents.  The answer to this pure question of law is that absentee clients can never give truly informed consent, and thus cannot knowingly waive conflicts of interest.  It certainly makes no sense to say that a fiduciary can waive his or her own conflicts of interest on behalf of claimants who need a court-appointed representative to guard their best interests.  Therefore, the bankruptcy court erred as a matter of law in holding that Patton's conflicts with respect to future claimants could be waived.

The bankruptcy court correctly held that the *guardian-ad-litem* test applies to assessing Patton's conflicts with future claimants, an issue that neither the FCR nor the Debtors appealed.  Yet now each spends many pages advocating for a different standard.  That is understandable because they lose under the *guardian-ad-litem* standard.  Yet even under Rule 1.7 and Bankruptcy Code Section 101(14), on which both Appellees rely, Patton has an unwaivable conflict with respect to future claimants who by definition cannot give informed consent to a conflict.

Appellees also go on at length defending the argument that Certain Excess Insurers prospectively waived Patton's conflicts of interest.  That is simply wrong—and the bankruptcy court erred in so holding—because this case and *Warren* are substantially related, and the waiver that Appellees cite expressly carves out substantially related cases.  Appellees argue that a

---

[1]  Appellants, Certain Excess Insurers, are filing a single over-length consolidated reply brief instead of using two 20-page-limit reply briefs.  Unless otherwise noted, all Docket references ("Dkt. __") are to *In re Imerys*, Case No. 19-10289, before Judge Laurie Selber Silverstein in Delaware Bankruptcy Court, internal quotations and citations are omitted, and any emphasis is added.

1

"substantially related" engagement means the "same transaction" or "legal dispute." But the prospective waiver to which Patton and Certain Excess Insurers agreed lists both categories, and if "substantially related" meant only the "same matter," then that clause would be superfluous. Of course, Certain Excess Insurers could not have knowingly waived the conflict of interest because Patton never disclosed the concurrent representation.

Neither Appellee responds to the FCR's inadequate disclosure of its conflicts of interest. That critical information came out only at the retention hearing, necessitating further disclosures. This failure creates an independent reason to reverse the orders below or, at the very least, to remand for further fact finding.

Finally, standing is yet another issue that neither Appellee appealed but that both are now trying to overturn. Leaving that aside, the bankruptcy court decided that Certain Excess Insurers are parties-in-interest, which plainly gives them standing to object to Patton's conflicted representation of tort claimants. Certain Excess Insurers are also aggrieved by Patton's simultaneous representation of both current and future claimants, which gives them standing on that issue too. By pulling punches, the FCR would permit paying more and sooner to current claimants. That, in turn, could cause Certain Excess Insurers (assuming they have coverage obligations) to pay earlier and at greater amounts than they would if the FCR were not conflicted. So putting current claimants ahead of future claimants directly harms Certain Excess Insurers.

2

## ARGUMENT

I.  **THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW IN HOLDING THAT PATTON'S CONFLICTS WITH RESPECT TO FUTURE CLAIMANTS COULD BE WAIVED.**

    A.  **Under the *guardian-ad-litem* standard, a fiduciary cannot waive conflicts of interest for the absentee parties he or she represents.**

Under the *guardian-ad-litem* standard, a fiduciary—such as an FCR—cannot waive conflicts of interest for whom he or she speaks.  Third Circuit precedent holds that whether a fiduciary has a conflict of interest is a pure issue of law.[2]  Therefore, this Court sitting as an appellate panel reviews *de novo* the bankruptcy court's holding on this issue.[3]

The future claimants are no different from other categories of individuals whom a *guardian ad litem* represents.  These include infants or others not fully capable of making decisions about their best interests.  None of these categories of individuals can ever give "truly informed consent"[4] under Third Circuit precedent and cannot knowingly waive conflicts of interest.[5]  It is nonsensical to suggest that a fiduciary can waive his or her own conflict of interest on behalf of claimants who need court-appointed representatives to guard their best interests.

---

[2]  *In re BH & P, Inc.*, 949 F.2d 1300, 1317 (3d Cir. 1991); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989) (appellate court conducts plenary review of conclusions of law).  Appellees mangle the standard of review applied to these issues.  An abuse of discretion standard applies to whether the Bankruptcy Court properly analyzed the factors when determining whether a conflict of interest was "potential" or "actual."  *In re BH & P*, 949 F.2d at 1317.  Once an "actual" conflict exists, the standard of review is *de novo* because an "actual" conflict of interest is *per se* disqualifying.  *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 477 (3d Cir. 1998).

[3]  *Id.*

[4]  *In re Congoleum Corp.*, 426 F.3d 675, 691 (3d Cir. 2005) (requiring truly informed consent to waive concurrent conflicts of interest); *see also United States v. Gordon*, 334 F. Supp. 2d 581, 585 (D. Del. 2004) (citing Rule 1.7(b)).

[5]  *In re Congoleum Corp.*, 426 F.3d at 681 (individual claimants must be given the individual opportunity to waive any conflict); *Palumbo v. Tele-Commc'ns, Inc.*, 157 F.R.D. 129, 133 (D.D.C. 1994) ("Unidentified class members cannot waive a potential conflict of interest.");

In fact, the Debtors acknowledge that future claimants are "absentee parties."[6]  That is a fatal acknowledgment for Appellees because under the above law that means that future claimants cannot give informed consent and cannot waive conflicts of interest.  The Debtors' contention that in the class-action context "the court plays the important role of protector of the absentees' interest, in a sort of fiduciary capacity," merely highlights the bankruptcy court's legal error in approving Patton, *i.e.*, overlooking conflicts with respect to future claimants that could not be waived as a matter of law.[7]  The FCR makes essentially the same erroneous argument in its brief.[8]  Moreover, in the class-action context there is at least a representative class member to look out for the class's interests—whereas here there is no one at all.

The Debtors' argument that Patton satisfies the *guardian-ad-litem* standard rests on a false premise: They contend that the FCR is not counsel to the future claimants.  The Debtors' claim that future claimants are not the FCR's clients is irrelevant (assuming for a moment it is true): the future claimants are Patton's clients and **he** is a lawyer.  As courts have stated and Section 524(g) requires, the FCR is the "legal representative" to whom the court granted the powers and duties of an entire committee under the Bankruptcy Code.[9]  Indeed, the job of an

---

*In re A.T.*, 744 N.W.2d 657, 665 (Iowa Ct. App. 2007) (holding twelve-year-old child not competent to waive the conflicts of interest that existed for her *guardian ad litem* and attorney in termination of parental rights action); *McDonald v. Hammons*, 936 F. Supp. 86, 88 (E.D.N.Y. 1996) ("[Children are not] competent to 'waive' the conflict."); *Bacon v. Mandell*, 2012 WL 4105088, at *14 (D.N.J. Sept. 14, 2012) (finding that a *guardian ad litem* who also acts as pro bono counsel in conflict because "such representative [is] . . . obligated to effectively wear two hats").

[6]  Debtors' Br. at 51.

[7]  *Id.*

[8]  FCR's Br. at 21–24.

[9]  *In re UNR Indus., Inc.*, 71 B.R. 467, 479 (Bankr. N.D. Ill. 1987) (The "Legal Representative . . . has been granted the powers and responsibilities of a committee."); *Matter of Johns-Manville Corp.*, 68 B.R. 618, 626–27 (Bankr. S.D.N.Y. 1986), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) (Bankr. S.D.N.Y. 1986) ("The Legal

FCR calls on him to use his legal skills—and Patton has built a whole legal practice out of being an FCR.  Appellees go on at length about Patton's qualifications and experience—which are strictly as a lawyer.  And Certain Excess Insurers challenge Patton's conflicts of interest, not his qualifications and experience as a lawyer.

**B.      The FCR and the Debtors should not be allowed to advocate an alternative to the *guardian-ad-litem* test, an issue that they never appealed.**

The Court correctly chose to evaluate conflicts of interest under the *guardian-ad-litem* test, and neither the FCR nor the Debtors appealed that ruling.  Yet now the Debtors (joined by the FCR) argue that the *guardian-ad-litem* standard does not apply.[10]  That argument is therefore not properly before this Court and should be rejected.  As the Supreme Court has held, "absent a cross appeal, an appellee . . . may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary."[11]  The Third Circuit has similarly held that if "an appellee aspires to alter the trial court's decision (either increasing its rights or decreasing those of its opponent), a cross-appeal is required."[12]

Appellees spill much ink discussing the disinterested-person test under Bankruptcy Code Section 101(14), which they assert is proper for assessing conflicts of interest.[13]  But Judge Silverstein considered and correctly rejected that standard after reviewing all references to

---

Representative was endowed upon his appointment with the full panoply of statutory rights and duties of representation available to an official committee under the Code."); APP00000522, Dkt. 503, May 8, 2019 Bench Ruling at 8 ("In bankruptcy terms, he is most like a committee member . . . to perform the duties of a committee member, as relevant to future claimants.").

[10]   Debtors' Br. at 21–23; FCR's Br. at 12, 28–30.

[11]   *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999).

[12]   *Tutein v. Insite Towers, LLC*, 572 F. App'x 107, 113–14 (3d Cir. 2014).

[13]   Debtors' Br. at 21–32.

"disinterested person" in the Bankruptcy Code.  In creating the FCR role, Congress essentially invoked a process used for a *guardian ad litem*.[14]  Though independent, the FCR serves as "an officer of the court."[15]  As the Third Circuit held, "[t]here are many statutory prerequisites imposed by § 524(g)" and "[m]any of these requirements are specifically tailored to protect the due process rights of future claimants."[16]  In particular, "[i]n the resolution of future asbestos liability, under bankruptcy or otherwise, future claimants must be adequately represented throughout the process."[17]

Debtors argue that because the FCR's responsibilities are "limited" (compared to a trustee), the FCR should not be held to a higher standard.[18]  But the FCR, as the sole legal representative for future claimants who are incapable of representing themselves, has a fundamentally different role than a trustee, who is responsible to the estate as a whole and not charged with advocating for the interests of a single creditor class.[19]  The different nature of the FCR's representation is the reason for the heightened standard; that the FCR has comparatively less power than a trustee is irrelevant.

---

[14]   *In re Amatex Corp.*, 755 F.2d 1034, 1043 (3d Cir. 1985) (describing its role and specifically referencing the representative as a *guardian ad litem*).

[15]   *Kollsman, a Div. of Sequa Corp. v. Cohen*, 996 F.2d 702, 706 (4th Cir. 1993) (stating *guardian ad litem* serves essentially as an appointed officer of the court); *duPont v. S. Nat. Bank of Houston, Tex.*, 771 F.2d 874, 882 (5th Cir. 1985) (same); *AT&T Mobility, LLC v. Yeager*, 143 F. Supp. 3d 1042, 1052 (E.D. Cal. 2015) (same); *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 652 (2d Cir. 1999) (stating court's continued obligation to supervise appointed representative).

[16]   *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 n.45 (3d Cir. 2004).

[17]   *Id.* at 245.

[18]   Debtors' Br. at 22 (citing *In re Duro Dyne Nat'l Corp.*, 2019 WL 4745879 (D.N.J. Sept. 30, 2019)).

[19]   *See In re Fairbanks Co.*, 601 B.R. 831, 839 (Bankr. N.D. Ga. 2019).

OMM_US:77248362.13

In light of this, the FCR's duty to represent future creditors prevents him or her from being "disinterested" under section 101(14) since the FCR will always have an interest "materially adverse to the interest of the estate or of any class of creditors or equity security holders." Judge Silverstein described the FCR's duties as most like a (future) claimant committee member, and disinterestedness is not the standard for such a committee.[20]  As Judge Lifland recognized three and a half decades ago in *Johns-Manville*, future claimants' interests are always adverse to the estate and not aligned to the other parties' interests.[21]  Congress then gave effect to this idea in Section 524(g), requiring court appointment of a future claimants' representative independent of the debtors and current claimants to satisfy due process.[22]

The cases that the Debtors cite purporting to "reject" the *guardian-ad-litem* test simply address the contours of the FCR's powers, making only passing (if any) reference to the standard for appointing an FCR.[23]  *G.I. Holdings* did not even involve a request to appoint an FCR in connection with a Section 524(g) channeling injunction, instead dealing with the power of an FCR to bind future claimants in an adversary proceeding.[24]  But whether an FCR has the power

---

[20]   APP00000524, Dkt. 503, May 8, 2019 Bench Ruling at 10.

[21]   *In re Johns-Manville Corp.*, 36 B.R. 743, 749 (Bankr. S.D.N.Y. 1984) (explaining how no party's interests were aligned with the future claimants when it appointed an FCR); *see also id.* at 749 n.3 ("[Current claimants'] stake in maximizing recovery from the reorganizing [debtors] may be antithetical to the expectations of future interests . . . .  [The debtor,] undoubtedly motivated by its own economic imperatives . . . has professed concern with the need for a present accommodation of future interests.  However, this skewed and less than robust advocacy [for future claimants] is not acceptable.").

[22]   *In re Combustion Eng'g, Inc.*, 391 F.3d at 234 n.45, 245.

[23]   *See In re G-I Holdings, Inc.*, 328 B.R. 691, 697–98 (D.N.J. 2005) (determining that the FCR only has power to act in a proceeding under Section 524(g)); *Johns-Manville*, 36 B.R. at 757 (preliminarily considering *guardian ad litem* form for future claims representative), *aff'd*, 52 B.R. 940 (S.D.N.Y. 1985); *In re UNR Indus., Inc.*, 29 B.R. 741, 748 (N.D. Ill. 1983) (finding that the court lacks power to bind future claimants).

[24]   *G-I Holdings*, 328 B.R., at 697–98.

to bind future claimants is a different matter from the standard under which a court should appoint an FCR in the first place.  These decisions do not respond to the latter question except tangentially at most.[25]

### C.   In any event, Patton has an "actual" conflict with respect to future claimants under Rule 1.7 and Section 101(14) does not eschew ethical obligations prohibiting conflicts of interest.

The Court need not reach the issue of which standard applies because under either standard, the FCR could not obtain informed consent from absent future claimants to waive the conflicts of interest.  Section 101(14) does not save the Order authorizing Patton because that provision does not eschew applying ethical rules to FCR appointments.

*First*, the Debtors ignore that in their engagement letter with Certain Excess Insurers, Patton and his firm agreed to abide by the Rules of Professional Conduct.[26]  A court should of course give effect to freely-agreed-to contractual promises.[27]

*Second*, the "disinterested" standard was not intended to replace ethical rules that apply to all attorneys, including Patton.  Courts nationwide have held that lawyers and law firms

---

[25]   *In re UNR Indus., Inc.*, 46 B.R. 671, 677 (Bankr. N.D. Ill. 1985) (ordering the appointment, after notice and hearing, of a disinterested party as future claimants' representative but engaging in no further discussion regarding the appointment standard).

[26]   APP00000529 (*Warren Pumps* requires that "the representation of the other client [be] in accordance with the applicable ethical and professional rules governing the conduct of lawyers ("Rules of Professional Conduct").").

[27]   *See Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999) ("A court's purpose in examining a contract is to interpret the intent of the contracting parties, as they objectively manifest it.").

8

appointed under the Bankruptcy Code remain subject to ethical rules.[28]  And standards that apply to other professionals provide guidance to the appointment of the FCR.  To satisfy the disinterested test, a bankruptcy professional must also comply with ethical obligations.  All lawyers practicing in bankruptcy court in Delaware must comply with the applicable Model Rules of Ethics.[29]  Thus, even under the disinterested standard, the FCR could not have obtained a waiver from future claimants because they cannot give informed consent.  And the Third Circuit requires informed consent before a conflict of interest may be waived.[30]

Debtors also argue that the only conflicts capable of running afoul of the disinterested standard in Section 101(14)(C) are those resulting from an individual's "personal interest[s]" adverse to the estate or a class of creditors.[31]  *First*, that disregards the bankruptcy court's holding that Young Conaway's "conflicts should be imputed to Mr. Patton [in] his individual

---

[28]  *In re Universal Bldg. Prods.*, 486 B.R. 650, 661 (Bankr. D. Del. 2010) (violation of Delaware's Rules of Professional Responsibility was grounds to disqualify firms from acting as counsel to Unsecured Creditors' Committee); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 164 (D.N.J. 2005) ("Not only are state ethical laws imposed upon professionals in the bankruptcy context, but the Bankruptcy Code and Federal Rules of Bankruptcy Procedure contain specific references and directives imposing additional ethical obligations upon attorneys and other professionals."); *In re Berger McGill*, 242 B.R. 413, 417–18 (Bankr. S.D. Ohio 1999) (bankruptcy courts can enforce state ethics laws through disqualification of counsel or disapproval of appointment of counsel).

[29]  Del. Bankr. L.R. 1001–1(b) (adopting the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware); D. Del. LR 83.6(d) (incorporating the Model Rules of Ethics); *see also In re Congoleum Corp.*, 426 F.3d at 688 ("In addition to the standards established by professional ethics, attorneys retained in bankruptcy proceedings are also required to meet the restrictions imposed by section 327 of the Bankruptcy Code."); *Univ. Bldg. Prods.*, 486 B.R. at 661; *Baron & Budd*, 321 B.R. at 164.

[30]  *In re Congoleum Corp.*, 426 F.3d at 681 (individual claimants must be given the individual opportunity to waive any conflict); *Palumbo v. Tele-Commc'ns, Inc.*, 157 F.R.D. 129, 133 (D.D.C. 1994) ("Unidentified class members cannot waive a potential conflict of interest.").

[31]  Debtors' Br. at 28–29.

9

capacity"[32]  This was undisputed below.  Additionally, Rule of Professional Conduct 1.10(a) imputes any individual attorney's conflicts to the entire law firm based on the principle that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated.[33]  **Second**, that does not help Appellees at all.  Patton stands to gain personally from both this engagement and his firm's representation of Certain Excess Insurers, an issue about which courts should be cautious in approving court-appointed representatives.[34] And the notion that it is impossible to vet conflicts of interest with unidentified future claimants contradicts precedent barring conflicted representations that could reduce overall recovery for one class of claimants.[35]

---

[32]   APP00000526, Dkt. 503, May 8, 2019 Bench Ruling at 12.

[33]   DE R RPC Rule 1.10(a) ("Except as otherwise provided in this rule, while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9").

[34]   *In re World Trade Ctr. Disaster Site Litig*., 834 F. Supp. 2d 184, 198 (S.D.N.Y. 2011), *vacated in part*, 754 F.3d 114 (2d Cir. 2014) (Judge Hellerstein noting monetary incentive of a law firms investing heavily in and then negotiating aggregate settlements where "[t]he prospect of settlement and a fee of $250 million gave the firm an interest that may not have been in line with many of its clients' interest"); Judge Alvin K. Hellerstein, *Democratization of Mass Tort Litigation Judicial Management to Enhance Claimants' Participation and Control*, 41 Brief 16, Summer 2012, at 17–18 ("[L]awyers have their own needs and concerns that can create powerful and hard-to-check motivations, not always consistent with the best interests of their clients. . . .  [Debts incurred in litigation] potentially can interfere with the lawyer's professional obligation to serve clients' interests . . . .  [For example] desire for an early mass settlement may compromise the potential for maximizing individual settlements.").

[35]   Debtors' Br. at 50; *see Amchem Products, Inc v. Windsor*, 521 U.S. 591 (1997) (conflicts of interest among class counsel for current and future claimants barred class certification).

10

## II.   THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW IN EXCUSING PATTON FROM THE PROHIBITION ON ACTUAL CONFLICTS THAT RULE 1.7(a)(1) IMPOSES.

### A.   Appellate courts review *de novo* whether conflicts exist under Rule 1.7(a)(1).

The Bankruptcy Court's decision to approve the FCR's appointment in the face of "actual" conflicts of interest under Rule 1.7 based on the contractual prospective waiver was a legal error that is reviewed *de novo*.[36]  Whether the waiver absolved Rule 1.7 conflicts is "an ultimate fact," which is "a legal concept with a factual component [that] is usually expressed in the language of a standard enunciated by case-law rule or by statute, *e.g.*, an actor's conduct was negligent; the injury occurred in the course of employment; the rate is reasonable."[37]  When reviewing an ultimate finding, an appellate court "must exercise a plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts."[38]  The clearly erroneous standard that Appellees advocate only applies to the bankruptcy court's "findings of historical or narrative facts."[39]  Accordingly, whether there was a Rule 1.7 conflict of interest and whether the prospective waiver applied are reviewed *de novo*.

Tellingly, while the FCR relies on *BH&P* to argue that the bankruptcy court has broad discretion to disqualify counsel for an "actual" conflict of interest, he excludes the most significant part of that opinion.[40]  The entire *BH&P* quotation makes clear that a bankruptcy

---

[36]   *In re Sharon Steel Corp.*, 871 F.2d 1217, 1223 (3d Cir. 1989) (whether a legal document was binding "clearly presents a question of law:  it requires the court to determine whether the sum of the facts presented to the court as a matter of law resulted in a stipulation that bound the parties.").

[37]   *Id.*

[38]   *Id.*

[39]   *Id.*

[40]   FCR Opp. Brief at 24–25.

11

court is entitled to discretion only when a potential conflict exists, not when there is an actual conflict: "As we have said, denomination of a conflict as 'potential' or 'actual' and the decision concerning whether to disqualify a professional based upon that determination ***in situations not yet rising to the level of an actual conflict*** are matters committed to the bankruptcy court's sound exercise of discretion."[41]  It is unlikely that this omission from the FCR's brief was inadvertent.

### B.     Rule 1.7 applies here, and Appellees cite no law holding that it does not.

Patton, whose law partners ***currently*** represent Certain Excess Insurers in the *Warren* case, is adverse to these same insurers in this case.  That constitutes adversity and is thus a textbook breach of RPC 1.7.  Adversity does not mean suing your client in the same case, as Appellees argue.[42]  Insurers are adverse to future claimants in the same way the insurers are adverse to current claimants.  And no one disputes adversity to current claimants.  Indeed, *Mid-Valley*, a case the Debtors cite, so holds.[43]  To be clear, the future claimants want the insurers to pay money into the estate.  Patton's job is to maximize that recovery.  That means he is trying to get his firm's clients (Certain Excess Insurers) to pay money to future claimants.  What is more, Certain Excess Insurers' arguments in favor of not paying as much as Patton may request overlap with the arguments they raise in *Warren*—where Patton's law firm is at this moment counsel to

---

[41]   *In re BH & P*, 949 F.2d at 1316–17.

[42]   Model R. Prof'l Conduct 1.7, cmt. [6] ("[A]bsent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated.").

[43]   *In re Mid-Valley, Inc*., 305 B.R. 425, 433 (Bankr. W.D. Pa. 2004) ("[T]he certain insurers' interests are adverse to *all* asbestos creditors' interests, future and present.").

OMM_US:77248362.13

some of the Certain Excess Insurers.  That presents a real risk that Young Conway may pull its punches.[44]

Even if future claimants were not "clients" under Rule 1.7(a)(1), Rule 1.7 still applies: Rule 1.7(a)(2) does not require that the conflict be between obligations to two clients—there just has to be a conflict between one client (Certain Excess Insurers) and the lawyer's other responsibilities (Patton's responsibilities to future claimants).  Patton's fiduciary responsibility as FCR brings him into concurrent conflict with his firm's representation of Certain Excess Insurers.  The Debtor's case on this point, *Mid-Valley*, does not address whether or how the Rules of Professional Conduct apply to an FCR retention.[45]  And a lawyer's fiduciary responsibilities create a concurrent conflict that must be resolved under Rule 1.7.[46]  The Debtors' attempt to carve out Patton and his law partners—who as lawyers are always "subject to the

---

[44]   *See In re Congoleum Corp.*, 426 F.3d at 688 ("Absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, because a conflict that materially limits a lawyer's representation of her client, even absent direct adversity may hinder a lawyer's ability to 'recommend or advocate all possible positions' for her clients."); *IBM v. Levin*, 579 F.2d 271, 280 (3d Cir. 1978) ("[I]t is likely that some 'adverse effect' on an attorney's exercise of his independent judgment on behalf of a client may result from the attorney's adversary posture toward that client in another legal matter."); *End of Road Tr. v. Terex Corp.*, 2002 WL 242464, at *1 (D. Del. Feb. 20, 2002) ("Rule 1.7(a) was enacted to prevent divided loyalties and to protect against the disclosure of client confidences."); Model R. Prof'l Conduct 1.7, cmt. [8] ("Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests.").

[45]   *In re Mid-Valley, Inc.*, 305 B.R. at 433.

[46]   Model R. of Prof'l Conduct 1.7(a) ("A concurrent conflict of interest exists if . . . (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer."); *see also* ABA Formal Op. 02-426 ("When a lawyer serves as a fiduciary and concurrently represents a beneficiary or creditor of the estate or trust, he must, in accordance with Rule 1.7, resolve any conflicts of interest that may arise.").

13

applicable rules of professional responsibility"—by relying on the hyper-technical point that the future claimants are not "clients" is not even relevant under Rule 1.7.

Moreover, comment 25 to Rule 1.7 (that Debtors cite to support their argument that representing future claimants is not subject to Rule 1.7) applies only to direct-adversity conflicts under Rule 1.7(a)(1) and does not extend to material-limitations conflicts under Rule 1.7(a)(2), *i.e.*, conflicts where the representation of one or more clients will be materially limited by the lawyer's other responsibilities.[47]  This is the punch-pulling problem.  Patton is thus conflicted under 1.7(a)(2) as a result his role as FCR because his responsibilities risk materially limiting his firm's representation of Certain Excess Insurers.  Put another way, to benefit future claimants, Young Conway may pulls its punches in representing Certain Excess Insurers.

As for the analogy to unnamed individual class members, that does not work.  Patton's conflict here affects the ***whole*** "class" of future claimants, making Patton a conflicted FCR for every single future claimant.  While Appellees appear to argue that Patton as an individual (as opposed to his firm) has no conflicts of interest with future claimants, under Appellees' reasoning, Patton's partners at Young Conaway would be allowed to sue Certain Excess Insurers tomorrow in an insurance coverage dispute.  That would make a mockery of Rule 1.7.

---

[47] *See* Model R. Prof'l Conduct 1.7, cmt. [8] ("[U]nnamed members of the class are ordinarily not considered to be clients . . . for purposes of applying paragraph (a)(1) of this rule.").

The Bankruptcy Court never determined whether an "actual" conflict under Rule 1.7 existed. But it should have made that determination "to ensure proper review" of the disinterestedness factors.[48] Failing to analyze conflict-of-interest factors is an error of law.[49]

### C. Certain Excess Insurers did not prospectively waive Patton's conflict because this case and *Warren* are substantially related.

Appellees argue that Certain Excess Insurers waived conflicts because this case and *Warren* are not substantially related, and thus the exception to the waiver does not apply. Here the question is whether insurance policies covering long-tail asbestos claims were properly exhausted, excess policies follow-form, horizontal exhaustion applies, and corporate successors are entitled to coverage under the policies.[50] Those are precisely the issues being litigated in *Warren*.[51] That is still an active case pending just down the street in Wilmington, Delaware before Judge Paul Wallace. The Debtors try to get around these inconvenient facts by arguing that "substantially related" means the "same transaction" or "legal dispute." But the engagement letter demonstrates by its plain terms that the Debtors are wrong. The prospective waiver to which Patton and Certain Excess Insurers agreed provides that "You agree that the Firm may represent other clients . . . provided that the Firm is not then representing and has not previously

---

[48] *In re BH & P*, 949 F.2d at 1317 ("to ensure proper review in these cases, those factors underlying the exercise of discretion" as to whether an actual or potential conflict exists "must be factually substantiated upon the evidentiary record."); *In re Glob. Marine, Inc.*, 1987 WL 61219 (Bankr. S.D. Tex. Sept. 28, 1987) (remanding to the bankruptcy court for additional findings and conclusions with respect to the issue of whether an actual conflict existed because "an actual conflict must be factually substantiated upon the evidentiary record.").

[49] *See Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (vacating an order "[b]ecause there were errors of law in considering and weighing the factors").

[50] Opening Br. at 15–16.

[51] APP00000538–540, 544–52, Dkt. 572-6, *Warren Pumps* Complaint.

15

represented You *in the same matter or a matter substantially related to the same matter*."  If

"substantially related" meant only the "same matter," then that clause would be superfluous.

And it is hornbook law that contracts should be read to give effect to every term.[52]  Debtors'

reading—in which the FCR joins—flies in the face of the contractual language.

Importantly, the Debtors' narrow view of "substantial relationship" is untethered from the

concern about concurrent conflicts that Rule 1.7 embodies.  There is no need under Rule 1.7 to

show prejudice or harm from a conflict of interest.  Nor do Appellees cite any authority for their

claim.  Instead, Debtors cite a comment to Model Rule 1.9, *not* Rule 1.7.  But Rule 1.9 addresses

"duties to *former* clients," not current ones.  Moreover, even the comment to Model Rule 1.9

does not call for proof of harm but offers that as an alternate basis for disqualification.[53]  The

Debtors then cite ABA Formal Opinion 05-436, which interprets Rule 1.9.[54]

And the Debtors and the FCR curiously do not fully cite Formal Opinion 05-435, which

discusses an example of concurrent conflicts similar to the FCR's conflict with Certain Excess

---

[52]  *Pasternak v. Glazer*, 1996 WL 549960, at *3 (Del. Ch. Sept. 24, 1996) ("An interpretation of a contract that renders one or more terms redundant is not preferred over a construction that gives effect to each of the agreement's terms."), *appeal dismissed and remanded*, 693 A.2d 319 (Del. 1997); *In re ASHINC Corp.*, 683 F. App'x 131, 141 (3d Cir. 2017) ("[W]e must avoid 'interpretations that render contract provisions meaningless or superfluous.'"); *TQ Delta, LLC v. ADTRAN, Inc.*, 2019 WL 3304705, at *5 (D. Del. July 23, 2019) (applying Delaware law and stating that "it is a principle of contract interpretation that courts 'should avoid interpreting contractual language in such a way as to render any term of the contract meaningless or superfluous'" (citing *In re Combustion Eng'g*, 366 F. Supp. 2d 224, 231 (D. Del. 2005))).  Part 5 of the *Warren Pumps* engagement letter states that Delaware law applies.  The bankruptcy court reviewed the entire engagement letter *in camera* for confidentiality reasons.  We will provide the full engagement letter to the Court on request.

[53]  Model R. Prof'l Conduct, cmt. [3].

[54]  That opinion interprets the meaning of the term "unrelated to the subject of the representation" in yet a different comment and clarifies that Rule 1.9 comment 3 relates to guidance on conflicts between a former client and a later matter for a different client.  ABA Formal Op. 05-436.

Insurers in *Warren*.  That Opinion holds that a "conflict of interest exists. . . if there is a **significant risk** that a lawyer's action on behalf of one client will **materially limit the lawyer's effectiveness** in representing another client in a different case; for example, when a decision favoring one client will **create a precedent likely to seriously weaken** the position taken **on behalf of the other** client."[55]  That punch-pulling is precisely the risk here.

The bankruptcy court also oddly gave the waiver narrow effect, even though it construed its plain terms broadly.  Specifically, after observing that in light of the overlap between this case and *Warren* "it is difficult to see how these issues are not encompassed in the waiver," the court concluded that "from their very nature, it appears these general [overlapping] issues could arise in every mass tort case and thus would eviscerate the very waiver given."[56]  The bankruptcy court thus reasoned that because the prohibited issues could "arise in every mass tort case," Certain Excess Insurers did not wish to extend the waiver to mass tort cases.  That is the exact **opposite** conclusion that an objective reader would draw from the observation that the prohibited issues could arise in every mass tort case and certainly have arisen in this case.

It is also simply untrue that the sole remaining issue in *Warren* is ministerial, where the policyholder wrote to the court seeking to litigate a number of open issues.[57]  Appellees offer no

---

[55]   ABA Formal Op. 05-435.

[56]   APP00000566, Dkt. 636, Judge Silverstein's May 31, 2019, Letter Order, at 6.

[57]   APP00000746–748, *Viking Pump, Inc. and Warren Pumps LLC v. Century Indemnity Company, et al.*, Del. Super., C.A. No. 10C-06-141-PRW, Dkt. 1353, June 12, 2018, Letter on Behalf of Warren Pumps LLC to Judge Wallace ("A limited number of depositions may be taken by either side if a party deems it necessary. . . .Warren will then present any remaining factual disputes to the Court for a fact-finding proceeding . . . To the extent that the Court believes that an award of prejudgment interest on those sums awarded pursuant to the § 6508 fact-finding procedure requires the existence of a breach of contract claim seeking those amounts, Warren is prepared to file a motion for leave to amend the Complaint to add such a claim.").

17

record evidence to contradict that, citing instead a decision that *Warren* (one of the policyholders in that case) has said it will appeal.  Perhaps they have had conversations with Patton in which he or his law partners disclosed information about *Warren* on which Appellees purport to rely— which would only confirm the conflict.

The six cases Debtors cite on pages 42–43 do not help because they (i) address only conflicts with former clients, (ii) do not cite Rule 1.7, and (iii) do not deal with the simultaneous substantial risk of punch-pulling.  It makes perfect sense that for former clients, the matters need to be almost identical or deal with the possibility of leaked confidential information to be substantially related.  Here, more so than the risk of sharing "general strategy" or "general litigation thinking"—which the Debtors mention—the danger is punch-pulling for Certain Excess Insurers.[58]

Finally, the argument about a prophylactic ethical wall has the ring of being half pregnant.[59]  Either you need a wall or you do not.  And since Patton's firm stated it was not relying on the ethical wall, there is no protection of any kind in place, either prophylactic or otherwise.[60]  In fact, for eight months before erecting this alleged wall, Patton worked as a prepetition pseudo or prospective FCR, during which time the Debtors disclosed to the FCR and

---

[58]   Debtors' Br. at 42.

[59]   Debtors' Br. at 44.

[60]   Only after the court suggested that YCST establish an ethical wall post-hoc did Patton's firm erect an ethical wall.  *See* APP00000526, Dkt. 503, May 8, 2019 Bench Ruling at 12 and APP00000534, Dkt. 554, Patton's Second Supplemental Declaration May 17, 2019 at ¶ 7 ("Kathryn M. Jakabcin, who serves as Young Conaway's Director of Risk Management, implemented the ethical wall on or about ***May 8, 2019***.").

OMM_US:77248362.13

current claimants privileged documents—something the Debtors never denied.[61]  Regardless of

what was clawed back after-the-fact, prepetition negotiations with no bankruptcy court

supervision tainted this representation.  Even an appearance of impropriety should not exist for

an officer of the court such as an FCR.[62]

> **D.**     **Certain Excess Insurers did not knowingly waive the conflict of interest here and could not have because Patton never disclosed his conflicts.**

Certain Excess Insurers did not knowingly waive the conflict of interest here and could

not have because Patton never disclosed his conflicts, nor could he have under his retention

agreement with Imerys.[63]  His engagement letter with Imerys barred him from disclosing that

---

[61]   APP00000189, Debtors' Objections to Certain Excess Insurers Requests for Admission ("The Debtors **admit only that certain publicly available information, including case pleadings, and non-privileged documents were provided to Mr. Patton and/or his counsel**."); APP00000296, Dkt. 833, Debtors' Objection to Cyprus Historical Excess Insurers' 2004 Motion ("Debtors' Objection"); APP00000644, at Dkt. 852, Declaration of Matthew Lovell ("Lovell Decl.") at 1–4.

[62]   *In re E. Sugar Antitrust Litig.*, 697 F.2d 524, 530 (3d Cir. 1982) ("[A] lawyer [and officer of the court] must avoid even the appearance of professional impropriety . . . [in] maintaining public confidence in the integrity of our system of justice and in the legal profession."); *Allen v. Stewart Title Guar.*, 246 F.R.D. 218, 219 (E.D. Pa. 2007) ("As part of this determination [to appoint class counsel] many courts consider whether counsel is free of conflicts of interest, since the responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel."); *Kayes v. Pac. Lumber Co*., 51 F.3d 1449, 1465 (9th Cir. 1995) ("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel. . . .  The 'appearance' of divided loyalties refers to differing and potentially conflicting interests and is not limited to instances manifesting such conflict."), *cert. denied*, 516 U.S. 914 (1995).

[63]   APP00000134, Dkt. 100-4, FCR Retention Letter, at 4 ("I, YCST, and any additional professionals retained by me . . . agree that, except as otherwise required by law, court order or process, or the terms of this engagement letter, they will not disclose the existence or terms of this agreement to any person, and shall treat all information concerning the Company and its affiliates not otherwise publicly available, including information concerning the possibility that the Company may file for bankruptcy relief . . . as confidential.").

19

information to Certain Excess Insurers.  One wonders about the propriety of an engagement letter that prohibits a lawyer from disclosing a conflict to an existing client.  Neither the FCR nor Debtors mention this in their briefs.

This alone is a fatal problem for the engagement.  Under Rule 1.7(b)(4), only with "informed consent, confirmed in writing," after "consult[ing] with the clients," may a lawyer undertake a case giving rise to a concurrent conflict.[64]  Certain Excess Insurers did not give their informed consent, either in writing or orally.  A comment to Rule 1.7 highlights that absent informed consent, a lawyer may not continue with a conflicted relationship.  That comment states that "when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent."  This is precisely the situation here, as Debtors did not allow Patton to disclose the conflict to Certain Excess Insurers."[65]

### E.   Neither the FCR nor the Debtors appealed the bankruptcy court's decision that Section 327 does not apply here.

Appellees also argue that Section 327(a) does not apply to appointing an FCR.  But the bankruptcy court held that Section 327 has no bearing on this case, and neither the FCR nor the Debtors appealed that decision.[66]  So any argument about the propriety of Section 327(a) is not properly before this Court.[67]

In all events, the Third Circuit has held that the Bankruptcy Code Section 327(a) disinterested standard "presents a per se bar to the appointment of a law firm with an ***actual***

---

[64]   *See* Model R. Prof'l Conduct 1.7, cmt. [2].

[65]   *See* Model R. Prof'l Conduct 1.7, cmt. [19].

[66]   APP00000517, Dkt. 503, May 8, 2019 Bench Ruling at 3.

[67]   *Neztsosie*, 526 U.S. at 479; *Tutein v. Insite Towers*, LLC, 572 F. App'x at 113–14.

OMM_US:77248362.13

conflict."[68]  Appellees cite no law suggesting that section does not apply to FCR appointments or an FCR who is the head of the law firm he engages for future claimants.  In fact, the law is to the contrary.[69]  Indeed, Appellees arguments that Section 327(a) does not apply to FCR appointments rely primarily on cases applying Section 327 to non-FCR appointments.[70]  Moreover, the FCR concedes that a trustee's appointment under Section 327 presents an "analogous situation" to the appointment of an FCR.[71]  In any event, Patton is not disinterested for the reasons discussed in Point I.C.

### III.   THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW BY IGNORING THE FCR'S INADEQUATE DISCLOSURES.[72]

The bankruptcy court ignored the FCR's failure to disclose its connections to the current tort claimants and to the *Warren* case.  These inadequate disclosures and the FCR's *post-hoc*

---

[68]   *In re Marvel Entm't Grp., Inc*., 140 F.3d at 477 (3d Cir. 1998) ("Section 327(a) presents a per se bar to the appointment of a law firm with an actual conflict, and gives the district court wide discretion in deciding whether to approve the appointment of a law firm with a potential conflict."); *In re Congoleum Corp*., 426 F.3d at 690–92.

[69]   *See In re Pittsburgh Corning Corp.*, 308 B.R. 716, 733 (Bankr. W.D. Pa. 2004) (applying Section 327 to counsel for the FCR); *In re Congoleum Corpo., et al.*, No. 03–51524 (Bankr. N .J. filed February 18, 2004) (allowing FCR to employ professionals consistent with § 327); *In re Combustion Eng'g*, No. 03–10495 (Bankr. Del. filed March 17, 2003) (same); *In re Armstrong World Indus., Inc.*, No. 00–4471 (Bankr. Del. filed March 2, 2002) (same); *In re Federal-Mogul Glob. Inc.*, No. 01–10578 (Bankr. Del. filed February 11, 2002) (same); *In re The Babcock & Wilcox Co.*, No. 00–10992 (Bankr. E.D. La. filed October 4, 2000) (FCR appointed pursuant to 11 U.S.C. §§ 105, 327, and/or 1103).

[70]   *See* Debtors' Opp. at 2, 27–29 (arguing that Patton is disinterested under Section 101(14) but relying on *BH&P*, which also applies Section 327); FCR's Opp. at 24–25, 30; *In re BH & P*, 949 F.2d at 1314 (analyzing Section 327 and 101(14)); *In re Marvel Entm't Grp., Inc*., 140 F.3d at 477 (3d Cir. 1998) (analyzing Section 327).

[71]   FCR's Opp. at 30.

[72]   In response to Debtors' Footnote 6, Certain Excess Insurers state:  Footnote 2 to Certain Excess Insurers' Opening Brief contained an error by including Lexington Insurance Company in the list of Certain Excess Insurers.  Lexington Insurance Company was not intended to be a party to this appeal.  As for Debtors' other remarks, the Opening Brief includes relevant statutes and rules.  A word-count certification is discretionary per the September 2019 Preferences & Procedures for Civil Cases Before the Honorable Maryellen

21

declaration (not subject to cross examination) justified disqualification on their own, an argument to which no Appellee responds. The FCR attempts to turn the tables by asserting that Certain Excess Insurers waived these objections,[73] but the FCR's initial disclosure statement did not discuss its representation or solicitation of current tort claimants. Certain Excess Insurers learned of these relationships only at the hearing on the FCR's retention. Nor did the FCR's disclosure statement reveal that Young Conaway worked on *Warren*, stating only that Young Conaway represents some of the Certain Excess Insurers "in insurance coverage disputes that relate to environmental liabilities including asbestos claims but unrelated to talc claims or the Debtors."[74]

Violating these disclosure rules alone is enough to disqualify a professional and deny compensation, "regardless of whether the undisclosed connections or fee arrangements were

---

Noreika. As relates to a few docketed Appendix documents, an appellate court may take notice of judicial proceedings that post-date the appeal to create a complete record. *In re Reliant Energy Channelview, LP*, 403 B.R. 308, 309 (D. Del. 2009), *aff'd*, 594 F.3d 200 (3d Cir. 2010); *see also Selkridge v. United of Omaha Life Ins. Co*., 360 F.3d 155, 164 (3d Cir. 2004) (appellate courts have the power to "take judicial notice of subsequent developments in related proceedings since the appeal in each case was filed"). Certain Excess Insurers have since filed a Corporate Disclosure Statement.

[73]   FCR's Opp. at 11.

[74]   APP00000106, Patton Declaration, Dkt. 100-3 at ¶13; *see In re Filene's Basement, Inc.*, 239 B.R. 845, 847 (Bankr. D. Mass. 1999) (disclosure deficient where application failed to provide "the identity of the plaintiff, the nature of the litigation, or any other fact which might have alerted [the court] to a potential problem").

22

materially adverse to the interests of the estate or were *de minimis*."[75]  Professionals must

"disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in

interest" and "cannot pick and choose which connections are irrelevant or trivial."[76]  Good faith

or negligence does not excuse a failure to disclose.[77]  In order to "give effect to the

disinterestedness requirements of the Bankruptcy Code," courts across the country "require strict

compliance with the disclosure requirements, independently of a finding of any actual conflict of

---

[75]  *In re BH & P, Inc.*, 103 B.R. 556, 567 (Bankr. D.N.J. 1989); *In re Universal Bldg. Prod.*, 486 B.R. 650, 663 (Bankr. D. Del. 2010) (failure of prospective counsel for unsecured creditors' committee to provide complete and accurate disclosure at the outset of their connections with creditors warranted denial of committee's applications); *In re Filene's Basement, Inc.*, 239 B.R. 845, 849 (Bankr. D. Mass. 1999) ("It has been held that the [disclosure] requirements of [Fed.R.Bankr.P. 2014] transcend those of § 327(a), as they mandate disclosure of all connections with the named parties, rather than being limited to those which deal with disinterestedness."); *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236–38 (Bankr. E.D. Cal. 1988) (disqualifying special counsel who failed to disclose that it represented co-defendants in litigation it was handling for debtor); *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992) ("Violation of the disclosure rules alone is enough to disqualify a professional and deny compensation, regardless of whether the undisclosed connections or fee arrangements were materially adverse to the interests of the estate or were *de minimis*. . . compliance with these requirements is necessary to maintain the integrity of the bankruptcy system."); *In re Thompson*, 54 B.R. 311, 316 (Bankr. N.D. Ohio 1985); *In re Kero–Sun, Inc.*, 58 B.R. 770, 777–81 (Bankr. D. Conn. 1986); *In re Marine Power & Equip. Co., Inc.*, 67 B.R. 643, 653 (Bankr. W.D. Wash.1986); *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 759 (Bankr. N.D. Tex. 1988); *In re Lee*, 94 B.R. 172, 177 (Bankr. D. Cal. 1988); *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991).

[76]  *In re EWC, Inc.*, 1992 WL 53647 (Bankr. W.D. Okla. Mar. 18, 1992).

[77]  *Jacques H. Geisenberger, Jr., P.C. v. DeAngelis*, 2011 WL 4458779, at *6 (M.D. Pa. Sept. 23, 2011); *In re Lee*, 1988 WL 130076 (Bankr. C.D. Cal. Nov. 22, 1988); *In re Michigan Gen. Corp.*, 78 B.R. 479, 482 (Bankr. N.D. Tex. 1987); *In re Coastal Equities*, 39 B.R. 304, 308 (Bankr. S.D. Cal. 1984).

OMM_US:77248362.13

interest."[78] "Compliance with these requirements is necessary to maintain the integrity of the bankruptcy system."[79] None of this happened below.

## IV. CERTAIN EXCESS INSURERS HAVE STANDING BECAUSE THEY ARE AGGRIEVED BY PATTON'S CONFLICTS.

The bankruptcy court decided that Certain Excess Insurers are parties-in-interest.[80] That gives them standing to argue that Patton's dual representation of tort claimants conflicts with his obligations to Certain Excess Insurers. This is yet another issue that neither the FCR nor the Debtors appealed. They have therefore waived any right to try and overturn that ruling.[81]

Certain Excess Insurers are also aggrieved by Patton's simultaneous representation of both current and future claimants, and under Third Circuit precedent that gives them standing on that issue.[82] By pulling punches, the FCR would permit paying sooner—and more—to current

---

[78] *See In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925 (2d Cir.1979); *In re Futuronics Corp.*, 655 F.2d 463 (2d Cir.1981); *In the Matter of Georgetown Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984).

[79] *Id.*

[80] APP00000522, Dkt. 503, May 8, 2019 Bench Ruling at 8.

[81] *Neztsosie*, 526 U.S. at 479; *Tutein v. Insite Towers*, LLC, 572 F. App'x at 113–14.

[82] *In re Congoleum Corp.*, 426 F.3d at 685 (3d Cir. 2005) (insurers are aggrieved for the purposes of appellate standing where the appeal is from an order "which will affect the fairness of the entire bankruptcy proceeding" and "counsel for insurers has a responsibility, if not a duty, to alert the Court to ethical conflicts."); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants' Comm.*, 321 B.R. at 161 (insurers' injury in fact for standing is based on "the unfairness of a plan which binds them contractually and which directly impacts their financial interests, unfairness which is traceable to conflicts of interest among Claimants' counsel."); *In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 402 n.20 (3d Cir. 2006) (allowing opposing counsel to move for disqualification even though the movant did not represent the aggrieved client); *In re Pittsburgh Corning Corp.*, 308 B.R. at 721 (Bankr. W.D. Pa. 2004) ("Lumbermens' counsel has standing to object to the application to employ GHR. Any attorney, not just a former client's attorney, has standing, and, indeed, the obligation, to call a conflict of interest to the attention of the court because attorneys must report any actual or potential ethical violations."); *see also In re Infotechnology, Inc.*, 582 A.2d 215 (Del. 1990) (nonclient litigant has standing to enforce violations of the Professional Rules of Conduct when he or she can demonstrate that the opposing counsel's conflict somehow prejudiced his or her rights). Appellees' citation to *Fed. Ins. Co. v. Grace*, 2004

24

claimants.  That, in turn, could cause Certain Excess Insurers (assuming they have coverage obligations) to pay greater amounts earlier than they would if the FCR were not conflicted.  So putting current claimants ahead of future claimants directly harms Certain Excess Insurers.

To the extent the bankruptcy court relied on Patton to police himself and make the necessary disclosures about his own conflicts, that was in error.[83]  Appellants are thus not asking this Court to overturn the bankruptcy court's "careful assessment of the facts," as the Debtors put it, because the bankruptcy court did not even allow discovery, let alone have all the facts before it to carefully assess.[84]  Instead, the bankruptcy court simply relied on Patton's self-serving statements without permitting Certain Excess Insurers to develop the facts necessary to challenge those statements.  At the very least, this Court should remand for further fact-finding.[85]

---

WL 5517843, at *4 (D. Del. Nov. 22, 2004), is off the mark because *Congoleum* implicitly overruled that decision.

[83]  Debtors' Br. at 49; *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (bankruptcy court must "exercise its own ongoing affirmative responsibility 'to root out impermissible conflicts of interest' under Bankruptcy Code §§ 327(a) and 328(c)").

[84]  Debtors' Br. at 49; *In re Congoleum Corp.*, 426 F.3d at 693 (explaining that "the level of court supervision must be of a high order" where procedures for allocation of resources are left "predominantly in the hands of private, conflicting interests" because "[t]he need for counsel with undivided loyalties is more pressing in cases of this nature than in more familiar conventional litigation"); *In re BH & P*, 949 F.2d at 1317 ("In order to ensure proper review in these cases, those factors underlying the exercise of discretion as to whether there is an actual or only potential conflict 'must be factually substantiated upon the evidentiary record.'").  The Court foreclosed attempts to make this evidentiary record.

[85]  *In re Duro Dyne*, 2019 WL 4745879, at *7 (D.N.J. Sept. 30, 2019) ("Because the Bankruptcy Court appointed the nominated future claimants' representative after notice, discovery, and a hearing, and did not grant deference to the nominee, the Bankruptcy Court's process in selecting the representative was appropriate.").

25

## CONCLUSION

For the foregoing reasons, Certain Excess Insurers respectfully request that this Court reverse the Bankruptcy Court's rulings and orders.

Dated:  February 14, 2020                         Respectfully Submitted,


                                                  By: */s/ Stamatios Stamoulis*
                                                      Stamatios Stamoulis (#4606)
                                                      stamoulis@swdelaw.com

                                                  STAMOULIS & WEINBLATT LLC
                                                  800 N. West Street, Third Floor
                                                  Wilmington, Delaware  19801
                                                  Telephone:    +1 302 999 1540
                                                  Facsimile:    +1 302 762 1688

                                                  and

                                                  O'MELVENY & MYERS LLP
                                                  Times Square Tower
                                                  7 Times Square
                                                  New York, New York  10036-6537
                                                  Telephone:    +1 212 326 2000
                                                  Facsimile:    +1 212 326 2061

                                                  Tancred Schiavoni (*pro hac vice*)
                                                  tschiavoni@omm.com
                                                  Gary Svirsky (*pro hac vice*)
                                                  gsvirsky@omm.com
                                                  Janine Panchok-Berry (*pro hac vice*)
                                                  jpanchok-berry@omm.com

                                                  *Counsel for Certain Excess Insurers*

OMM_US:77248362.13

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2020, I electronically filed the Certain Excess Insurers' **Reply Brief on Appeal** with the Clerk of Court using CM/ECF, which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis

27