IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| IMERYS TALC AMERICA, INC., ) | |
| IMERYS TALC VERMONT, INC., and ) | BK Case No. 19-10289 (LSS) |
| IMERYS TALC CANADA, INC., ) | |
| ) | |
| Debtors. ) | |
| | |
| CYPRUS HISTORICAL EXCESS ) | |
| INSURERS, ) | C.A. No. 19-944 (MN) |
| ) | BAP No. 19-39 |
| Appellant, ) | |
| ) | C.A. No. 19-1120 (MN) |
| v. ) | BAP No. 19-42 |
| ) | |
| IMERYS TALC AMERICA, INC., ) | C.A. No. 19-1121 (MN) |
| IMERYS TALC VERMONT, INC., ) | BAP No. 19-43 |
| IMERYS TALC CANADA, INC., and ) | |
| FUTURE CLAIMANTS' ) | C.A. No. 19-1122 (MN) |
| REPRESENTATIVE, ) | BAP No. 19-44 |
| ) | |
| Appellees. ) | |

**MEMORANDUM OPINION**

Stamatios Stamoulis, STAMOULIS & WEINBLATT LLC, Wilmington, DE; Tancred Schiavoni, Janine Panchok-Berry, O'MELVENY & MYERS LLP, New York, NY – Attorneys for Appellants.

Michael J. Merchant, Marcos A. Ramos, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Jeffrey E. Bjork, Amy C. Quartarolo, Helena G. Tseregounis, LATHAM & WATKINS LLP, Los Angeles, CA; Richard A. Levy, LATHAM & WATKINS LLP, Chicago, IL; Roman Martinez, Gregory B. in den Berken, LATHAM & WATKINS LLP, Washington, D.C. – Attorneys for Appellees Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada, Inc.

Robert S. Brady, Edwin J. Harroun, Sara Beth A.R. Kohut, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE – Attorneys for Appellee Future Claimants' Representative.

November 24, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is the appeal (D.I. 14) of five excess insurers ("Appellants" or "the Excess Insurers")[1] of three Bankruptcy Court orders: the Order Appointing James L. Patton, Jr., ("Patton") as Legal Representative for Future Talc Personal Injury Claimants, *Nunc Pro Tunc* to the Petition Date ("the Appointment Order"); the Order Denying Certain Excess Insurers' Motion to Compel Debtors' Responses to Discovery ("the Discovery Order"); and the Order Authorizing the Future Claimants' Representative to Retain and Employ Young Conaway Stargatt & Taylor, LLP ("Young Conaway") as his Attorneys, *Nunc Pro Tunc* to the Petition Date ("the Retention Order").[2] The issues have been fully briefed. (D.I. 14, 15, 22–25, 29, 30). For the reasons set forth below, the Bankruptcy Court's three Orders are affirmed.

**I.    INTRODUCTION**

Appellees Imerys Talc Vermont, Inc., Imerys Talc America, Inc., and Imerys Talc Canada, Inc. (collectively, "Imerys") distribute talc to third-party manufacturers for use in products.

---

[1] The five Excess Insurers are Columbia Casualty Company ("Columbia"), Continental Casualty Company and the Continental Insurance Company (as successor to CNA Casualty of California and as successor in interest to certain insurance policies issued by Harbor Insurance Company) ("Continental"), Lamorak Insurance Company (formerly known as OneBeacon America Insurance Company and as successor to Employers' Surplus Lines Insurance Company) ("Lamorak"), Stonewall Insurance Company (now known as Berkshire Hathaway Specialty Insurance Company) ("Stonewall"), and National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). (D.I. 14 at 6). Lexington Insurance Company was listed in error in Appellants' opening brief and is not a party to this appeal. (D.I. 29 at 21 n.72).

[2] Unless otherwise stated, docket citations are to *In re Imerys Talc America, Inc.*, 1:19-cv-944-MN (D. Del. filed May 22, 2019), appealing the Bench Ruling on Motion to Appoint James L. Patton, Jr. as the Legal Representative for Future Talc Personal Injury Claimants. The Appointment Order is appealed in related case 1:19-cv-1120-MN, the Discovery Order is appealed in related case 1:19-cv-1121-MN, and the Retention Order is appealed in related case 1:19-cv-1122-MN.

(D.I. 22 at 6). Appellants are insurance companies that issued insurance policies to Imerys. (D.I. 14 at 6, 15).

Imerys has been sued in thousands of lawsuits by individuals alleging that Imerys' talc contains asbestos and has caused asbestos-related diseases. (D.I. 22 at 6). In the face of mounting liability, Imerys prepared to file for Chapter 11 bankruptcy and hired Patton as a potential future claimants' representative ("FCR") pursuant to 11 U.S.C. § 524(g)(4)(B)(i). Patton works for the law firm Young Conaway. (D.I. 14 at 13). On February 13, 2019, Imerys filed its chapter 11 petition in the Bankruptcy Court for the District of Delaware. (D.I. 22 at 8; D.I. 1-1 at 1).

Imerys then moved the Bankruptcy Court to have Patton appointed as FCR. (D.I. 22 at 8). The Excess Insurers objected, (D.I. 15-1 at 160–67), and filed a motion to compel discovery responses from Imerys regarding Patton's appointment, (*id.* at 285–95). On April 26, 2019, the Bankruptcy Court held a hearing on the objection and motion to compel. (D.I. 1-1 at 2).

On May 8, 2019, the Bankruptcy Court issued a Bench Ruling on the appointment of Patton as FCR. (D.I. 1-1). The Bankruptcy Court considered different standards for selecting an FCR and ultimately adopted a *guardian ad litem* standard. (*Id.* at 10). Under the *guardian ad litem* standard, the Bankruptcy Court found no reason to doubt Patton's qualifications or independence. (*Id.* at 10–12). The Bankruptcy Court, however, requested additional disclosures on several conflict-related matters relevant to this appeal. (*Id.* at 12). First, because Young Conaway had previously solicited talc personal injury claimants on its website, the court required Patton to disclose whether Young Conaway was engaged to represent any of these clients. (*Id.*) Second, Patton had to disclose whether he, through Young Conaway, had represented any insurance companies in insurance coverage litigation related to asbestos liability. (*Id.*) Patton had testified that Young Conaway may represent the Excess Insurers in the matter *Viking Pump, Inc. v. Century*

2

*Indemnity Co.* ("*Warren Pumps*"), but he represented that the Excess Insurers had prospectively waived any conflict. (*Id.* at 12, citing C.A. No. 10C-06-141-PRW, 2013 WL 7098824 (Del. Super. Ct. Oct. 31, 2013)).

Thereafter, Patton provided two supplemental declarations. (D.I. 15-1 at 528–31; *id.* at 532–36). He also submitted for *in camera* review the engagement letter between Young Conaway and the Excess Insurers in *Warren Pumps*, which contained the prospective waiver of conflicts. (*Id.* at 560). The Excess Insurers submitted a supplemental objection to Patton's appointment. (D.I. 23 at 603–23). The Bankruptcy Court considered Patton's supplemental declaration and the Excess Insurers' supplemental objection, and sent a letter to litigants concluding that Patton was fit to serve as FCR. (D.I. 15-1 at 561–69).

On June 3, 2019, the Bankruptcy Court issued the Appointment Order. (D.I. 23 at 640–43). It also issued the Discovery Order, denying the requested discovery. (D.I. 15-1 at 570–71). Three days later, the Bankruptcy Court issued the Retention Order allowing Patton to retain Young Conaway as his attorneys. (D.I. 23 at 649–52).

Appellants timely appealed the Bankruptcy Court's appointment of Patton as FCR, denial of the Excess Insurers' motion to compel discovery responses, and authorization to retain Young Conaway. (D.I. 1). They state the issues as follows:

1. Whether the fiduciary standard that the Court below ruled applied to Future Claimants' Representatives ("FCR") permits the representative to waive concurrent conflicts of interest.

2. Whether the Bankruptcy Court erred as a matter of law by approving the retention of Mr. Patton as FCR and pursuant to the applicable fiduciary standard, knowing [aspects of the factual record and proceedings below].

(D.I. 14 at 8–9).

3

## II.     JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over appeals from final judgments, orders, and decrees from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1) and Federal Bankruptcy Rule of Procedure 8001.  "The Court reviews the Bankruptcy Court's legal determinations *de novo*, factual findings for clear error, and exercises of discretion for abuse thereof." *Fed. Ins. Co. v. Grace*, Civil Action Nos. 04-844, 04-845, 2004 WL 5517843, at *2 (D. Del. Nov. 22, 2004).

## III.    LEGAL STANDARDS

### A.     Appointment of a Future Claimants' Representative

Following dozens of asbestos-related bankruptcies across the country, in 1994, Congress amended the Bankruptcy Code to provide asbestos tort claimants a trust-based means of recovering against a debtor.  H.R. REP. NO. 103-835 at 40 (1994); *see also* H.R. REP. NO. 114-352 at 5 (2015).  Under 11 U.S.C. § 524(g), as part of a chapter 11 plan of reorganization, a debtor may create a trust to serve as the exclusive source of post-confirmation compensation for any present and future mass-tort claimants.  H.R. REP. NO. 103-835 at 41–42.  For the trust to be valid and enforceable, the bankruptcy court must "appoint[ ] a legal representative for the purpose of protecting the rights of persons that might subsequently assert demands" of the kind for which the trust is set aside.  11 U.S.C. § 524(g)(4)(B)(i).  The court-appointed representative is commonly referred to as the future claimants' representative.

"[A]ppointment of a future claimants' representative is solely within the discretion of the court."  *In re Fairbanks Co.*, 601 B.R. 831, 835 (Bankr. N.D. Ga. 2019).  *Compare* 11 U.S.C. § 701(a) ("the United States trustee shall appoint one disinterested person"), § 327(a) ("the trustee, with the court's approval, may employ [professionals] that do not hold or represent an interest adverse to the estate, and that are disinterested persons"), *and* § 1104(d) ("the United States trustee . . . shall appoint, subject to the court's approval, one disinterested person . . . to serve as trustee

4

or examiner"), *with* § 524(g)(4)(B)(i) ("the court appoints a legal representative for the purpose of protecting the rights of persons that might subsequent assert demands"). The Bankruptcy Code does not, however, set the standard or provide procedures for a bankruptcy court to follow when appointing a future claimants' representative. *See Fairbanks*, 601 B.R. at 838.

In *In re Johns-Manville Corp.*, a seminal asbestos bankruptcy case that pioneered the future claimants' trust mechanism later codified in § 524(g), the bankruptcy court appointed an FCR based on a disinterested person standard. 36 B.R. 743, 749 n.3 (Bankr. S.D.N.Y. 1984) ("an independent representative for future claimants is essential"). *See also* H.R. REP. NO. 103-835 at 40. Some bankruptcy courts, however, have recently adopted a "fiduciary-like" *guardian ad litem* standard for appointing an FCR. *Fairbanks*, 601 B.R. at 838. An FCR under a *guardian ad litem* standard must be not only "disinterested and qualified" but also "diligent, competent, and loyal," and "capable of acting as an objective, independent, and effective advocate for the best interests of the future claimants." *Id.* at 841.

## IV. DISCUSSION

The Excess Insurers appeal the Appointment, Discovery, and Retention Orders. The bulk of their arguments, however, is directed to Patton's appointment as FCR.[3] The Court will address the appeal of the Appointment and Retention Orders first,[4] and the appeal of the Discovery Order second.

---

[3] The titles of the Excess Insurers' briefs state that the appeal is "from a Bankruptcy Court Order Appointing James Patton of Young Conaway as Future Claimants' Representative." (D.I. 14; D.I. 29).

[4] Like the Bankruptcy Court and the parties, this Court imputes the conflicts of interest of Young Conaway to Patton when considering this appeal. And thus, the Court treats the objections to the appointment of Patton and the retention of Young Conaway together.

5

### A.     Appointment of Patton and Retention of Young Conaway

#### 1.     Representation of Excess Insurers in Warren Pumps

The Excess Insurers argue that Patton had an actual, concurrent conflict because Young Conaway represents some of the Excess Insurers as defendants in the *Warren Pumps* matter, and the prospective waiver that Young Conaway obtained was not effective to bless the firm's representation of future talc claimants in this case.  (D.I. 14 at 36–40).

Three of the Excess Insurers – Columbia, Lamorak, and Stonewall – are not parties to *Warren Pumps*, and thus will not be harmed by any alleged conflict arising from that matter. (D.I. 15-1 at 564).  Therefore, those three Appellants do not have standing to raise this conflict. *See In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993) (limiting bankruptcy appellate standing to persons "whose rights or interests are directly and adversely affected pecuniarily by an order or decree of the bankruptcy court" (internal quotation marks and citation omitted)).

The remaining two Excess Insurers – Continental and National Union – have been represented by Young Conaway in *Warren Pumps* since 2014.  (D.I. 14 at 15 n.25).  Although Young Conaway's concurrent representation of Patton (and Patton's representation of future claimants) in the present case may create a conflict of interest, Continental and National Union waived this argument by failing to timely raise it.  The Excess Insurers first objected to Patton's appointment based on conflicts arising from *Warren Pumps* after the objection deadline set by the Bankruptcy Court.  (*See* D.I. 15-1 at 561–69 (letter ruling of the Bankruptcy Court, noting tardiness of the Excess Insurers' supplemental objections, filed after evidentiary hearing)).  As a general matter, the Court "refuse[s] to consider issues on appeal that were not raised in the lower courts. This general rule applies with added force where the timely raising of the issue would have permitted the parties to develop a factual record."  *In re Am. Biomaterials Corp.*, 954 F.2d 919, 927–28 (3d Cir. 1992) (internal citations omitted).

Thus, the Excess Insurers waived their objections to, or otherwise lack standing to challenge, the Appointment and Retention Orders based on the potential conflict arising from Young Conaway's representation of Excess Insurers in *Warren Pumps*.

### 2. The Bankruptcy Court Did Not Abuse Its Discretion

Even absent standing and waiver considerations, the Bankruptcy Court did not abuse its discretion in appointing Patton as FCR or allowing Patton to retain Young Conaway. *See Fairbanks*, 601 B.R. at 835 (holding that appointment of FCR is within bankruptcy court's discretion). There is no dispute as to Patton's qualifications or experience. The bases for the Excess Insurers' appeal are the alleged conflicts arising from Young Conaway's representation of current claimants in talc personal injury lawsuits and the Excess Insurers in *Warren Pumps*. The Bankruptcy Court did not abuse its discretion in addressing the purported conflicts.

First, the Excess Insurers have not shown that Young Conaway represents any current talc personal injury claimants. The Excess Insurers' claim to the contrary is based on the fact that, on April 26, 2019 – eight months after Imerys hired Patton as pre-petition FCR – the Young Conaway website stated that "our injury lawyers work with people across Delaware and beyond who have been harmed by all types of dangerous and defective products, including talcum powder." (D.I. 15-1 at 510–11). The Bankruptcy Court found credible Patton's testimony that his firm's pre-engagement conflict search did not reveal any talc personal injury claimants. (D.I. 1-1 at 12). The Bankruptcy Court also accepted Patton's supplemental disclosure that, "[n]either Young Conaway nor I represent any clients who are asserting claims based on exposure to talc." (D.I. 15-1 at 529 ¶ 4; D.I. 15-1 at 563). The Excess Insurers offered no evidence otherwise.[5]

---

5   The Excess Insurers blame their lack of evidence on the Bankruptcy Court's denial of the motion to compel discovery responses from Imerys, which they assert would have allowed them to investigate Patton's assertions. (D.I. 14 at 31). As discussed below, the Excess

Second, Patton's appointment was not an abuse of discretion, despite Young Conaway's concurrent representation of the Excess Insurers in *Warren Pumps*. The Bankruptcy Court, within its discretion, applied the *guardian ad litem* standard for appointing an FCR. In doing so, the Bankruptcy Court considered the entire record, supplemental declarations, and objections, and concluded that Patton was fit to serve as FCR. In particular, the Bankruptcy Court parsed the conflict waiver in *Warren Pumps* sentence-by-sentence and found that the conflict, if any, was effectively waived because the Excess Insurers were "sophisticated parties" and "had enough information" to give informed consent. (D.I. 15-1 at 568). Crucially, the waiver contained a specific carveout allowing Young Conaway to represent other clients "in workout, bankruptcy and insolvency proceedings" and "in connection with trusts established pursuant to section 524(g) of the Bankruptcy Code." (*Id.* at 565, 568). Thus, even if Continental and National Union had not waived this objection by failing to timely raise it, the Bankruptcy Court found that they had expressly waived the argument in their agreement with Young Conaway. The Bankruptcy Court also acknowledged that Young Conaway had established an ethical wall between this matter and matters in which the firm represents defendant insurance companies. (*Id.* at 564). This thorough deliberation does not suggest an abuse of discretion regarding *Warren Pumps*.

The Excess Insurers argue that the Bankruptcy Court erred as a matter of law because *Warren Pumps* creates an actual, concurrent conflict of interest, which *per se* disqualifies Patton from serving as FCR. (D.I. 14 at 33–34). The Court disagrees. Rule 1.7 of the Delaware Lawyers' Rules of Professional Conduct states that a concurrent conflict of interest exists if:

> (1)   the representation of one client will be directly adverse to another client; or

---

Insurers offer no support for this Court to find that the Discovery Order was an abuse of discretion.  *See* Section IV.B *supra*.

>       (2)     there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

DEL. RULES OF PRO. CONDUCT R. 1.7. The American Bar Association clarifies that when a lawyer represents an insurance company in one matter and also represents a plaintiff suing an insured of the insurance company in another matter, "economic adversity alone between the insurer and the plaintiff in the second action is not . . . the sort of direct adversity that constitutes a concurrent conflict of interest." ABA Comm. on Ethics & Pro. Resp., Formal Op. 05-435 (2004). Thus, these two concurrent representations do not create an actual conflict of interest.

The Court is also not persuaded by the Excess Insurers' argument that an actual conflict, if any, is *per se* disqualifying or could not be waived. The Excess Insurers rely on cases that construe other provisions of the Bankruptcy Code involving retention of attorneys. For example, *In re Marvel Entertainment Group, Inc.* construed 11 U.S.C. § 327(a) to disqualify *per se* any law firm with an actual conflict of interest. 140 F.3d 463, 477 (3d Cir. 1998). *See also In re eToys, Inc.*, 321 B.R. 176, 194 (Bankr. D. Del. 2005) (adding that, although these conflicts can be waived, such waivers require greater disclosures in the chapter 11 context). Disinterestedness jurisprudence under § 327(a), however, does not necessarily apply to § 524(g), even if a bankruptcy court decides to apply a disinterestedness standard – or, indeed, a stricter *guardian ad litem* standard – when appointing an FCR. *See Grace*, 2004 WL 5517843, at *6 ("[Section 327(a)] cannot be utilized because it invokes the word 'trustee.' Under § 524, courts must appoint a future claimants' representative, not a trustee."). To import the disinterestedness standard of § 327(a) would undermine the bankruptcy court's broad discretion under § 524(g). *See Fairbanks*, 601 B.R. at 835 ("[A]ppointment of a future claimants' representative is solely within the discretion of the court.").

The Excess Insurers also argue that the conflict waiver in *Warren Pumps* is not effective in the present case because the issues in the two matters are "substantially related." (D.I. 14 at 38). The Excess Insurers characterize both matters as involving questions about "(i) excess policies' defense obligations; (ii) exhaustion of underlying insurance policies; (iv) [sic] allocating indemnity and defense payments among the insurance policies; and (iv) which successor corporate entity is entitled to policy proceeds to pay long-tail claims." (*Id.*). Such a broad construction of "substantially related" would undermine the waiver's express statement that Young Conaway may continue to represent other clients "in workout, bankruptcy and insolvency proceedings." (D.I. 15-1 at 565). Thus, to the extent *Warren Pumps* creates a conflict of interest, the waiver in the engagement letter applies to Patton's appointment as FCR here.

Ultimately, this Court "is free to affirm the appointment of the future claimants' representative on any basis which has sufficient support in the record." *Grace*, 2004 WL 5517843, at *7. The Bankruptcy Court conducted a thorough review under the *guardian ad litem* standard and concluded, "there is no question that Mr. Patton is up to the task." (D.I. 1-1 at 10). None of the Excess Insurers' evidence or objections suggested otherwise. Out of an abundance of caution the Bankruptcy Court considered Patton's supplemental declarations alongside the Excess Insurers' untimely supplemental objections, and still concluded that Patton was fit to serve as FCR. (D.I. 15-1 at 561–69). None of these actions suggest that the Bankruptcy Court abused the broad discretion granted to it by § 524(g), and thus the Bankruptcy Court's Appointment and Retention[6] Orders should be affirmed.

---

[6] *See supra* note 5.

### B. Denial of the Excess Insurers' Motion to Compel

The Excess Insurers offer no factual or legal support for their challenge Bankruptcy Court's Discovery Order. Instead, they submit a conclusory statement that the Bankruptcy Court's refusal to "allow investigation into Young Conaway's efforts to solicit, and indeed, stated representation of current claimants up to and including the hearing date to approve Mr. Patton as FCR . . . was in error." (D.I. 14 at 31). Without more, the Excess Insurers cannot overcome the Bankruptcy Court's "broad discretion in managing discovery and case schedules." *In re Melilo*, Civ. No. 15-3880, 2015 WL 6151230, at *2 (D.N.J. Oct. 19, 2015). Thus, the Bankruptcy Court's Discovery Order is affirmed.

### V. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Appointment Order, Retention Order, and Discovery Order are affirmed. An appropriate order will follow.